TAKAYOSHI MATSUDA, Plaintiff-Appellant, v. THE COOK COUNTY EMPLOYEES' AND OFFICERS' ANNUITY AND BENEFIT FUND *et al.*, Defendants-Appellees.

First District (6th Division) No. 1—94—3230

Opinion filed November 3, 1995.—Rehearing denied March 7, 1996.

Alan R. Borlack and Clement J. Carroll, both of Bailey, Borlack, Nadel-hoffer & Carroll, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Patricia M. Moser and Andrew M. Varga, Assistant State's Attorneys, of counsel), for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Dr. Takayoshi Matsuda, a retired employee of Cook County Hospital, brought this action to compel the establishment of an excess benefit fund from which plaintiff would receive payment of certain pension benefits owed to him for accepting early retirement under the Illinois Pension Code. Defendants, the Cook County Employees' and Officers' Annuity and Benefit Fund (Cook County Fund) and the Retirement Board of the County Employees' Annuity and Benefit Fund of Cook County (Retirement Board), together filed a combined motion to dismiss and motion for summary judgment. The trial court denied the motion to dismiss, but granted defendants' motion for summary judgment, ruling that Federal law does not permit defendants to establish an excess benefit fund. Plaintiff appeals the trial court's granting of summary judgment for defendants. We reverse and remand.

On May 29, 1993, plaintiff, a physician employed by Cook County Hospital for 24 years, retired at age 55. As an employee of Cook County, plaintiff was a contributing member of defendant Cook County Fund, an annuity and benefit fund established and operated under article 9 of the Illinois Pension Code. (40 ILCS 5/9—101 *et seq.* (West 1992).) Pursuant to section 9—185 of the Illinois Pension Code,

defendant Retirement Board was created to carry out the provisions of article 9 for members of Cook County Fund. 40 ILCS 5/9—185 (West 1992).

On September 16, 1992, the Illinois General Assembly made early retirement incentives available to certain members of Cook County Fund. Pursuant to newly added section 9—134.2 of the Illinois Pension Code, titled "Early retirement incentives," any contributing member who (1) filed a written application requesting the early retirement incentives before May 1, 1993, (2) elected to retire between December 1, 1992, and May 29, 1993, (3) was at least 55 years of age on such retirement date, and (4) had at least 10 years of service prior to retirement would become entitled to receive a specified increase in the employee's retirement annuity without any reduction in benefits otherwise caused by retiring below age 60. 40 ILCS 5/9—134.2 (West Supp. 1993).

On November 4, 1992, defendants mailed to plaintiff unsolicited information discussing the requirements and advantages of the above early retirement incentives. On November 23, 1992, defendants then mailed to plaintiff an estimated personal benefit statement subject to final audit. The estimate calculated that if plaintiff acted on the early retirement incentives and made additional contributions of $62,954.39, plaintiff would receive an estimated monthly annuity of $9,899.37. On April 30, 1993, plaintiff, who met all the applicable requirements, filed an early retirement application stating that he would retire on May 29, 1993. Defendants thereafter sent plaintiff another estimated personal benefit statement subject to audit. This estimate, dated May 13, 1993, calculated that if plaintiff took early retirement and made additional contributions of $60,317.84, plaintiff's monthly annuity would amount to $9,967.31. On May 26, 1993, plaintiff contributed $60,317.84, and on May 29, 1993, he retired.

Sometime after filing his application on April 30, 1993, but before May 29, 1993, plaintiff was orally advised by a representative of defendants that plaintiff's retirement benefits would be subject to some undetermined ceiling as a result of section 415 of the Internal Revenue Code of 1986. (26 U.S.C. § 415 (1988).) Months later, by letter dated September 1, 1993, defendants notified plaintiff for the first time in writing that his monthly annuity would amount to $7,219.85, substantially lower than previously estimated. In a letter dated October 1, 1993, defendants attributed this reduction in plaintiff's annuity to limitations set forth in section 415 of the Internal Revenue Code for qualified retirement plans. 26 U.S.C. § 415 (1988).

On December 23, 1993, plaintiff filed a two-count complaint

against defendants. Count I alleged that defendants violated section 1—116 of the Illinois Pension Code by failing to establish an excess benefit fund to pay out the benefits promised to plaintiff that exceeded any limits set by section 415 of the Internal Revenue Code. Count II alleged that by their conduct and plaintiff's reliance thereon, defendants were estopped from objecting to establishing such an excess benefit fund. Defendants did not answer the complaint. Instead, on February 3, 1994, defendants together filed a combined motion to dismiss and motion for summary judgment.

In their motion to dismiss, defendants asserted that the trial court lacked jurisdiction. The trial court denied the motion to dismiss, and that ruling has not been appealed. In their motion for summary judgment, defendants did not contest any facts, but asserted that, as a matter of Federal law, they are not allowed to establish an excess benefit fund. The trial court granted defendants' motion for summary judgment, holding "that the court interprets the statute in favor of defendant[s] as to Count I," and in effect, "as to Count II, the estoppel would not operate" because "it would be requiring defendant[s] to do something [they're] not required to do."

Plaintiff appeals the trial court's ruling. The issue on review is whether defendants are prohibited by Federal law from establishing an excess benefit fund pursuant to section 1—116 of the Illinois Pension Code in a situation such as this where the pension benefits owed exceed the limits set by section 415 of the Internal Revenue Code for a qualified retirement plan. Resolution of this technical issue requires setting forth the relevant Illinois Pension Code sections and the pertinent language of section 415 of the Internal Revenue Code.

As a former employee of Cook County, plaintiff's retirement benefits are controlled by article 9 of the Illinois Pension Code. Section 9—150 of this article states the following:

"§ 9—150. Maximum annuities.

* * *

(3) Notwithstanding any other provision of this Article, any benefit payable under this Article which would otherwise exceed the maximum limitations on benefits provided by 'qualified plans' as set forth in Section 415 of the federal Internal Revenue Code of 1986, as now or hereafter amended, or any successor thereto, shall be paid only in accordance with Section 1—116 of this Code." 40 ILCS 5/9—150 (West 1992).

Section 1—116 of the Illinois Pension Code, cross-referenced by section 9—105, sets forth the following requirements:

"§ 1—116. Federal benefit limitation.

(a) This Section shall apply only to pension funds and retire-

ment systems established under Article 2, 7, 8, 9, 11, 13, 14, 15, 16 or 18.

(b) If any benefit payable by a pension fund or retirement system subject to this Section exceeds the applicable benefit limits set by Section 415 of the U.S. Internal Revenue Code of 1986 for tax qualified plans under Section 401(a) of that Code, the excess shall be payable only from an excess benefit fund established under this Section in accordance with federal law.

(c) An excess benefit fund shall be established by any pension fund or retirement system subject to this Section that has any member eligible to receive a benefit that exceeds the applicable benefit limits set by Section 415 of the U.S. Internal Revenue Code of 1986 for tax qualified plans under Section 401(a) of that Code. Amounts shall be credited to the excess benefit fund, and payments for excess benefits made from the excess benefit fund, in a manner consistent with the applicable federal law." 40 ILCS 5/1—116 (West Supp. 1993).

Section 415 of the Internal Revenue Code, referred to in both of the above Illinois Pension Code provisions, is titled "Limitations on benefits and contribution under qualified plans." (26 U.S.C. § 415 (1988).) Section 415 dictates that, in determining maximum annuities under qualified plans maintained by governments, the employer's share of an employee's annuity is limited to the smaller of "100 percent of the participant's average compensation for his high 3 years" (26 U.S.C. § 415 (b)(1)(B) (1988)), or the dollar amount of "$75,000 if the benefit begins at or after age 55" (26 U.S.C. § 415 (b)(2)(F)(i)(II) (1988)).

In the case at hand, the parties agree that the original benefit estimates given to plaintiff exceeded the limits of section 415. In their letter to plaintiff's attorney in October 1993, defendants explained, "With 24.33 years of service and 15.67 years of optional service, Dr. Matsuda would be entitled to 80% of his final average salary or $9,790.86 per month. However, this amount appears to be in excess of the maximum allowable benefit under Section 415." Defendants now calculated that under section 415, the maximum employer's contribution would be $75,000 a year or $6,250 per month. Adding this to plaintiff's employee contribution of $969.85 per month results in a total maximum annuity of $7,219.85 per month.

On appeal, plaintiff contends that defendants induced him to accept early retirement by the promise that he would receive increased pension benefits and then, notwithstanding section 1—116 of the Illinois Pension Code, defendants refused to pay plaintiff the excess benefits. Plaintiff argues that in cases such as this, where the pension amounts owed exceed the limits of section 415 of the Internal Reve-

nue Code for qualified plans, section 1—116 requires governmental pension funds such as Cook County Fund to establish a nonqualified benefit fund. Formation of such an excess benefit fund, plaintiff contends, is specifically required by Illinois law and not prohibited by Federal law.

Defendants contend, however, and the trial court agreed, that, as a matter of Federal law, governmental plans such as Cook County Fund cannot establish nonqualified plans to pay excess benefits. Defendants argue that section 1—116 requires action "in accordance with federal law," and because plaintiff cannot point to some specific Federal statute that enables a governmental plan such as Cook County Fund to establish an excess benefit fund, summary judgment for defendants was appropriate.

We agree with plaintiff that defendants' interpretation would make section 1—116 an illusory and meaningless statutory provision. The primary rule of statutory construction is to ascertain and give effect to the legislature's intention. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 473 N.E.2d 1313.) A court should avoid an interpretation under which a statute is "explained away, or rendered insignificant, meaningless, inoperative, or nugatory." (*Pliakos v. Illinois Liquor Control Comm'n* (1957), 11 Ill. 2d 456, 460, 143 N.E.2d 47, 49.) It is presumed that when a legislature enacts legislation, it does so rationally with full knowledge of all previous enactments. *State of Illinois v. Mikusch* (1990), 138 Ill. 2d 242, 562 N.E.2d 168.

"Where construction of pension statutes is necessary, the rule is that pension acts must be liberally construed in favor of rights of the pensioner." (*Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1986), 114 Ill. 2d 518, 521, 502 N.E.2d 718, 720.) Courts also generally interpret the word "shall" in statutory language as being mandatory or directory. *Niziolek v. Chicago Transit Authority* (1993), 251 Ill. App. 3d 537, 620 N.E.2d 1097.

■ Section 1—116 of the Illinois Pension Code was enacted in 1991 (Pub. Act 86—1488, § 1, eff. January 14, 1991), and amended as recently as 1993. (Pub. Act 87—794, § 1, eff. November 19, 1991) (amending 40 ILCS 5/1—116); (Pub. Act 87—1265, § 1, eff. January 25, 1993) (amending 40 ILCS 5/1—116). We are aware of no other case that has interpreted the meaning of section 1—116. Nevertheless, the statute's language bears directly on the situation at hand. The statute dictates what "shall" be done "if any benefit payable by a pension fund or retirement system *** exceeds the applicable benefit limits set by Section 415 of the U.S. Internal Revenue Code." (40 ILCS 5/1—116(b) (West Supp. 1993).) Section 1—116(c) specifically

states that in this type of situation, "[a]n excess benefit fund shall be established by any pension fund or retirement system subject to this Section" (40 ILCS 5/1—116(c) (West Supp. 1993)), and this must be done "in a manner consistent with the applicable federal law." 40 ILCS 5/1—116(c) (West Supp. 1993).

In addition to Cook County Fund, nine other pension funds and retirement systems are subject to section 1—116. These include the General Assembly Retirement System (article 2), Illinois Municipal Retirement Fund (article 7), Municipal Employees', Officers', and Officials' Annuity and Benefit Fund (article 8), Sanitary District Employees' and Trustees' Annuity and Benefit Fund (article 13), State Employees' Retirement System of Illinois (article 14), State Universities Retirement System (article 15), Teachers' Retirement System of the State of Illinois (article 16), and Judges Retirement System of Illinois (article 18). (40 ILCS 9/1—116(a) (West Supp. 1993).) Each of these 10 pension plans subject to section 1—116 is a "governmental plan" as defined by the Internal Revenue Code. (26 U.S.C. § 414(d) (1988).) According to defendants, however, a governmental plan cannot establish an excess benefit fund as required by section 1—116. In effect, section 1—116 would be meaningless and illusory.

■ We refuse to adopt this interpretation of section 1—116. Defendants' interpretation ignores the clearly mandatory language of the statute. Defendants grasp tightly to the language in section 1—116 that an excess benefit fund should be established "in accordance with federal law" (40 ILCS 9/1—116(b) (West Supp. 1993)), and that the excess payments should be made in "a manner consistent with the applicable federal law" (40 ILCS 9/1—116(c) (West Supp. 1993)). While defendants argue that nothing in Federal law *permits* a governmental plan like Cook County Fund to set up an excess benefit fund, plaintiff argues that nothing in Federal law *prohibits* this action. We agree with plaintiff that it is not necessary to look for enabling language in Federal statutes, because the enabling language for setting up an excess fund already exists in section 1—116. (40 ILCS 5/1—116 (West Supp. 1993).) Section 1—116 would only be inconsistent with Federal law if the Internal Revenue Code or some other Federal statute specifically prohibited the use and establishment of an excess benefit fund.

We have found no Federal provision prohibiting what the Illinois General Assembly has required in section 1—116. Defendants point us in various directions in trying to support the contention that Federal law prohibits the formation of an excess benefit fund, but their efforts are to no avail. First, ERISA (the Employee Retirement Income Security Act) has no bearing whatsoever on the issue at hand.

(29 U.S.C. § 1001 *et seq.* (1976).) ERISA expressly states that it does not apply to governmental retirement plans. (29 U.S.C. §§ 1002(32), 1003(b)(1) (1976).) The defendants here, Cook County Fund and Retirement Board, derive their power solely from the Illinois Pension Code, not ERISA.

Defendants have also produced proposed legislation, which Congress did not pass, to amend section 415 of the Internal Revenue Code, and an Internal Revenue Service information letter. We refuse to give any weight to proposed legislation that was not passed by Congress. Also, the Internal Revenue Service information letter specifically states, "This is not a ruling, however, and may not be relied on with respect to any transaction." (*IRS Information Letter on Section 415 Limitations on Public Plans,* Pen. & Ben. Rep. (BNA) vol. 18, No. 34, at 1,552 (August 26, 1991).) Moreover, plaintiff persuasively argues that this letter does not really have any bearing on whether Cook County Fund and the Retirement Board can establish an excess benefit fund.

The letter sets forth the following:

> "Question 10. Would section 415 of the Code be violated if a governmental plan transferred amounts in excess of the section 415 limits to a nonqualified arrangement for distribution to the participant who had the excess?
>
> A. Yes. Governmental plans would violate section 415 by transferring amounts that exceed section 415 under a qualified plan from that plan to a nonqualified arrangement, and distributing those benefits from the nonqualified arrangement. Such a spin-off of qualified funds may also violate other qualification requirements, such as the exclusive benefit rule under Section 401(a)(2)." (*IRS Information Letter on Section 415 Limitations on Public Plans,* Pen. & Ben. Rep. (BNA) vol. 18, No. 34, at 1,552 (August 26, 1991).)

This exchange concerns transfers and spin-offs between qualified and nonqualified plans. Yet, section 1—116 calls for the establishment of a separate and distinct fund to pay out excess benefits. The information letter, which merely advises against transfers between qualified and nonqualified plans, falls short of proving that, as a matter of Federal law, defendants cannot separately establish a nonqualified plan to pay out benefits in excess of section 415's limits.

Finally, the legislative history behind section 1—116 shows that the General Assembly was acutely aware of relevant Federal law, specifically section 415 of the Internal Revenue Code. On June 29, 1990, when discussing the bill that added section 1—116 to the Illinois Pension Code, Rep. Wolf stated that Senate Bill 1951 contains

"general provisions for six pension systems which covers the Section 415 limits and sets up an excess fund for payment of excess benefits in order that these pension systems themselves will not be in violation of the IRS Code." 86th Ill. Gen. Assem., House Proceedings, June 29, 1990, at 298 (Statements of Representative Wolf).

Rep. Wolf again noted on January 8, 1991, that in Senate Bill 1951, "we provide for the setting up of an excess limits fund in the State Treasury in order to make sure that the state funded systems do not violate section 415 of the IRS Code and thereby lose their tax qualification status." (86th Ill. Gen. Assem., House Proceedings, January 8, 1991, at 62 (Statements of Representative Wolf).) In 1993, the General Assembly amended section 1—116 so that instead of commanding that the excess benefit fund "shall be established as a special fund in the State Treasury" (40 ILCS 5/1—116(c) (West 1992) (amended by Pub. Act 87—1265, § 1, effective January 25, 1993)), section 1—116(c) now dictates that "[a]n excess benefit fund *shall be established by any pension fund or retirement system* subject to this Section." (Emphasis added.) (40 ILCS 5/1—116(c) (West Supp. 1993).) Apparently, the General Assembly did not believe that expressly allowing and directing governmental pension plans and retirement boards like defendants to establish nonqualified excess benefit funds is somehow inconsistent with or in violation of Federal law. Nor do we.

We agree with plaintiff that defendants' interpretation of section 1—116 of the Illinois Pension Code would make it an illusory and meaningless statutory provision. We do not find that Federal law prohibits what the General Assembly requires in section 1—116. Accordingly, we reverse the circuit court of Cook County's grant of summary judgment in favor of Cook County Fund and Retirement Board and remand for further proceedings.

Reversed and remanded.

EGAN and ZWICK, JJ., concur.