BUDDIE YOUNG, Plaintiff-Appellee, v. MICHAEL L. MORY, as Executive Secretary of the State Employees' Retirement System of Illinois, *et al.*, Defendants-Appellants.

Fifth District   No. 5—97—0089

Opinion filed February 4, 1998.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellants.

Steven F. Hanagan, of Hanagan & Dousman, of Mt. Vernon, for appellee.

JUSTICE HOPKINS delivered the opinion of the court:

Defendants, the State Employees' Retirement System of Illinois (SERS) and Michael L. Mory, the executive secretary of SERS, appeal from the judgment order and permanent injunction entered in favor of plaintiff, Buddie Young, by the White County circuit court. On appeal, defendants contend that plaintiff's complaint was not ripe for consideration by the trial court, that the trial court erred in entering a permanent injunction against defendants because plaintiff had an adequate remedy at law, and that the trial court erred by ordering SERS to refrain from offsetting plaintiff's retirement benefits by the attorney-fees portion of his workers' compensation award. We affirm the trial court.

## A. FACTS

The parties agree that the facts are undisputed and the issues involve only questions of law. Plaintiff is an employee of the Illinois

Department of Transportation (IDOT) and participates in SERS's pension plan. Plaintiff has pending workers' compensation claims against IDOT. Plaintiff and IDOT have agreed to settle the workers' compensation claims for $100,000. Prior to finalizing the settlement, plaintiff filed a complaint against defendants in the circuit court, requesting a declaratory judgment and a permanent injunction.

In the complaint, plaintiff alleged that he sustained work-related injuries, that those injuries resulted in disability, that he hired a law firm to represent him on his workers' compensation claims, that he is required to pay his attorney a fee out of any workers' compensation benefits he receives, and that he "desires to accept" IDOT's settlement proposal "but for the matters" alleged in the complaint. Essentially, plaintiff claims that he should not have his SERS benefits reduced by the amount of the fees he must pay his attorney for obtaining the workers' compensation benefits for him. Plaintiff's claim is based upon the common-fund doctrine, whereby "an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it." *Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119, 124 (1977).

In addition to workers' compensation benefits, plaintiff is entitled to occupational disability benefits from SERS. 40 ILCS 5/14—123 (West 1996). Under section 14—129 of the Illinois Pension Code, SERS is entitled to offset any amounts plaintiff receives under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1996)) against the amount of occupational disability payments it is required to pay plaintiff. 40 ILCS 5/14—129 (West 1996). The statute authorizing the offset provides:

> "[B]efore the board takes any action on an application for an occupational disability or occupational death benefit, adjudication by the Industrial Commission of Illinois or a ruling by the agency responsible for determining the liability of the State under the Workers' Compensation Act or the Workers' Occupational Diseases Act shall be had on a claim to establish that the disability or death was incurred while in the performance and within the scope of the member's duties, under the terms of the Illinois Workers' Compensation Act or the Workers' Occupational Diseases Act, whichever applies. *The system shall make payment of an occupational disability or occupational death benefit only if the claim is found to be compensable under one or both of those Acts.*
>
> *Any amounts provided for a member* or his dependents under those Acts *shall be applied* for the period of time prescribed by such Acts for payments thereunder *as an offset to any occupational disability \*\*\* benefit \*\*\** in such manner as may be prescribed by

the rules of the board." (Emphasis added.) 40 ILCS 5/14—129 (West 1996).

In conjunction with the above-quoted statute, SERS has adopted a regulation which provides, "The amount considered for offset purposes shall not be reduced by any legal expenses granted from the award to the member." 80 Ill. Adm. Code § 1540.90(a)(5) (1997). Thus, even though the worker is required to file a workers' compensation or occupational disability claim as a part of the process of claiming a disability pension from SERS, SERS still offsets the portion of the award that the worker is required to pay his or her attorney. This is the crux of the issue before this court, whether SERS should be allowed to offset the portion of the workers' compensation or occupational disability award that is payable to the worker's attorney.

At the hearing on plaintiff's motion for summary judgment, defendants presented testimony from Robert Hicks, a disability supervisor employed by SERS. Hicks testified that, if plaintiff accepted the $100,000 settlement offer, his monthly payment would be $673 during the offset period. If SERS offset the entire $100,000 settlement, plaintiff would receive $673 per month for 62.2355 months and then his monthly payments would be increased to 75% of his final salary while employed. If SERS offset only the amount plaintiff received after deducting the attorney fees of $20,000, plaintiff would still receive $673 per month, but only for 49.884 months, before SERS began to pay him at the higher rate of 75% of his final salary. Plaintiff's interest in whether the offset includes the portion of the award that goes to his attorney is this: he will be paid at a lower rate for nearly 13 months longer if the entire $100,000 is offset. In other words, his disability pension, which is greater than his offset payment, will be payable almost 13 months sooner if only the $80,000 plaintiff actually receives is offset.

The trial court resolved the issue in favor of plaintiff, holding that the regulation (80 Ill. Adm. Code § 1540.90(a)(5) (1997)) disallowing the reduction of the offset for legal expenses is invalid "as a matter of law." The court also found that the common-fund doctrine applies to the defendants under the facts of the case, that plaintiff's remedy at law is inadequate, and that plaintiff would sustain irreparable harm if the regulation was allowed to apply to him. The trial court granted plaintiff's motion for summary judgment and entered a permanent injunction to prohibit defendants from enforcing the invalid regulation. The order provides, in pertinent part, as follows:

"This Court declares that the common fund doctrine is applicable to [SERS] and serves to reduce the amount of [SERS's] offset provided for [by statute] by the amount of attorneys' fees and

legal expenses incurred by the Plaintiff in obtaining his workers' compensation settlement or award.

Final Judgment is hereby entered in favor of the Plaintiff, BUDDIE YOUNG, and against the Defendants ***.

The Defendants, as well as their agents and employees, are hereby permanently enjoined and restrained from including the amount of attorneys' fees and expenses in its computation of the offset provided for in [section] 14—129."

## B. ANALYSIS

### 1. THE STANDARD OF REVIEW

■ This court is to conduct a *de novo* review of the court's grant of a summary judgment in favor of plaintiff. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90 (1992). However, the proper standard of review from a decision granting or denying a declaratory judgment is whether the trial court abused its discretion. *Stone v. Omnicom Cable Television of Illinois, Inc.*, 131 Ill. App. 3d 210, 215 (1985). A review of the merits of the case underlying the court's issuance of the permanent injunction is subject to *de novo* review, but the court's ruling with respect to the elements necessary to establish the right to a permanent injunction (*i.e.*, a right in need of protection, an inadequate remedy at law, and irreparable harm) may not be reversed absent an abuse of discretion. *Butler v. USA Volleyball*, 285 Ill. App. 3d 578, 582 (1996).

### 2. WHETHER THE CASE WAS RIPE FOR ADJUDICATION

Defendants argue that the trial court erred in reaching the merits of plaintiff's complaint, contending that the issue was not ripe for consideration. According to defendants' argument, plaintiff presented no actual controversy for the court to determine, because plaintiff had not yet received any workers' compensation award and SERS had not yet offset any amount from that award.

■ The courts should not adjudicate declaratory judgment actions involving moot or hypothetical issues, or where a party seeks an advisory opinion or mere advice from the court regarding anticipated future difficulties. *Weber v. St. Paul Fire & Marine Insurance Co.*, 251 Ill. App. 3d 371, 373 (1993). By the same token, however, a declaratory judgment action is designed to "settle and fix rights before there has been an irrevocable change in the position of the parties that will jeopardize their respective claims of right." *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 174 (1995).

■ A declaratory judgment action is proper if there is an actual controversy for the court to resolve. A case involves an actual controversy "if there is a legitimate dispute admitting of an immedi-

ate and definite determination of the parties' rights, the resolution of which would help terminate all or part of the dispute." *First of America Bank*, 166 Ill. 2d at 173. The plaintiff in a declaratory judgment action need not have suffered the wrong or incurred the injury prior to filing suit, so long as a "definitive and immediate determination of the rights of the parties is possible." *Messenger v. Edgar*, 157 Ill. 2d 162, 171 (1993). Thus, a certainty of resolution is necessary, but an occurrence of the injury is not.

■ The case at bar was properly brought before the court as a request for declaratory judgment. In order to state a cause of action for declaratory judgment, a plaintiff must allege (1) that he has a tangible legal interest with regard to the claim, (2) that the defendant's conduct is opposed to that interest, and (3) that there is an ongoing controversy between the parties that is likely to be prevented or resolved if the court decides the case. *Adams v. Meyers*, 250 Ill. App. 3d 477, 484 (1993).

■ In this case, plaintiff has alleged sufficient facts to meet all three requirements. Plaintiff has alleged facts to show that he has a tangible legal interest in having only the amount of workers' compensation he actually receives offset before he is allowed to collect the higher monthly payment of his disability pension. Defendants have made it clear that their conduct is opposed to plaintiff's interest; defendants admit that they intend to offset plaintiff's disability pension by the whole workers' compensation award, including the $20,000 plaintiff will be obligated to pay his attorney. Finally, the trial court's decision definitively settled the matter by finding the regulation allowing the offset as to legal expenses to be invalid and by entering an injunction to prevent defendants from enforcing the regulation.

The cases defendants cite do not persuade us differently. In *Weber*, the court held that a declaratory judgment action to determine an insurer's duty to indemnify its insured, if brought prior to the resolution of the question of the insured's liability, is premature, or not ripe, until the issue of liability is determined. *Weber*, 251 Ill. App. 3d at 374. In the instant case, however, there is no question of liability, as it is clear that plaintiff's employer, IDOT, is liable for plaintiff's injuries, which were incurred in the course of his employment. Additionally, the amount of the liability has been settled; but for this lawsuit, IDOT has offered and plaintiff has agreed to accept $100,000 as a full settlement of plaintiff's workers' compensation action.

Defendants cite *Clark Oil & Refining Corp. v. City of Evanston*, 23 Ill. 2d 48, 50 (1961), for the proposition that plaintiff's "alleged desire to enter into the settlement with [IDOT] is not sufficient to

create an actual controversy justifying the intervention of the courts." The court in *Clark Oil* decided that the plaintiff did not have standing to maintain the action. In the case at bar, there is no question of standing, which is a separate issue from ripeness. Thus, defendants' reliance upon the *Clark Oil* case is misplaced.

Finally, defendants cite the United States Supreme Court case of *International Longshoremen's & Warehousemen's Union, Local 37 v. Boyd*, 347 U.S. 222, 98 L. Ed. 650, 74 S. Ct. 447 (1954), as support for their argument that no actual controversy exists between plaintiff and defendants but that plaintiff simply wants an advisory opinion from the court. In *Boyd*, the Court found that the plaintiffs were not seeking to resolve a controversy about a statute presently affecting them but that they only requested an advisory opinion about a statute that had not yet been applied adversely to anyone in the case. *Boyd*, 347 U.S. at 223-24, 98 L. Ed. at 652, 74 S. Ct. at 448. In the case *sub judice*, absent the trial court's decision, the regulation in question was certain to be applied to plaintiff as soon as he accepted the workers' compensation settlement. That plaintiff has not yet lost any money is not the determining factor; the certainty that he will lose money without a declaratory judgment and that a decision by the court will resolve the matter are determinative. The trial court did not abuse its discretion by finding that the issue was ripe for decision.

### 3. WHETHER THE PERMANENT INJUNCTION WAS PROPERLY ENTERED

■ Defendants argue that the permanent injunction was not proper because it changed the status quo, whereas the law requires that a permanent injunction maintain the status quo. Defendants accurately quote cases that set forth the rule that a permanent injunction is intended to maintain the status quo when the plaintiff proves that irreparable harm will occur and that there is no adequate remedy at law. See *Butler*, 285 Ill. App. 3d at 582; *Orr v. Department of Revenue*, 217 Ill. App. 3d 672, 674 (1991). In *Orr*, this court found that the plaintiff was not entitled to injunctive relief because the administrative remedies available to him amounted to an adequate remedy at law, sufficient to negate the need for an injunction. *Orr*, 217 Ill. App. 3d at 674.

The trial court considered this argument and concluded that the Illinois Supreme Court case of *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill. 2d 540 (1977), was controlling. In *Bio-Medical*, the court held that if a statute or administrative rule is attacked on its face, the plaintiff does not need to exhaust his administrative reme-

dies first and the court may properly find that plaintiff does not have an adequate remedy at law. *Bio-Medical*, 68 Ill. 2d at 548.

Here, the rule set forth in *Bio-Medical* is even more applicable. Plaintiff is attacking SERS's regulation that provides that legal expenses cannot be exempted from the offset of the workers' compensation award. Defendants have made it clear that they have no intention of interpreting this regulation as invalid. If plaintiff had settled his workers' compensation claim and submitted his claim for a disability pension to SERS before obtaining a court ruling on the validity of the regulation, SERS clearly would have enforced the regulation. Thus, without the permanent injunction prior to the settlement of the workers' compensation claim, plaintiff would receive the lower offset amount for an additional 13 months before SERS began paying his higher disability pension. Additionally, SERS claims only to be responsible for paying disability benefits as they come due each month, and not as a total lump-sum figure. Because of this, plaintiff would most likely have to litigate the issue on a monthly basis, at least until plaintiff could get a court to rule on the validity of the regulation. Under the ruling in *Bio-Medical*, under these facts, and in the interest of justice, we hold that the court did not abuse its discretion in finding that plaintiff did not have an adequate remedy at law and that, without a permanent injunction, plaintiff would be irreparably harmed.

## 4. THE INVALIDITY OF THE OFFSET REGULATION

■ Section 14—129 of the Illinois Pension Code requires that a claimant, such as plaintiff, who requests disability pension income from SERS must first obtain a ruling from the Illinois Industrial Commission or other appropriate agency to establish that the disability was incurred in the scope of and in the performance of the member's duties under the terms of the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (1996)) or the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.* (1996)). 40 ILCS 5/14—129 (West 1996). Section 14—129 additionally requires that "[a]ny amounts provided for a member or his dependents" under either the Workers' Compensation Act or the Workers' Occupational Diseases Act "shall be applied for the period of time prescribed by such Acts for payment thereunder as an offset to any occupational disability or occupational death benefit or to a survivors annuity." 40 ILCS 5/14—129 (West 1996).

In response to the requirements of section 14—129, the SERS board of trustees has implemented a regulation governing the manner in which benefits are to be offset. That regulation is as follows:

"The amount considered for offset purposes shall not be reduced by any legal expenses granted from the award to the member." 80 Ill. Adm. Code § 1540.90(a)(5) (1997).

Thus, under section 14—129 of the Illinois Pension Code and the corresponding SERS regulation, plaintiff was required to obtain a ruling from the Illinois Industrial Commission that his injuries are job-related. In order to obtain that ruling, plaintiff was compelled to hire an attorney to represent him. The attorney obtained a final settlement offer of $100,000 from plaintiff's employer for plaintiff's total disability. Out of the $100,000 settlement, plaintiff is obligated to pay his attorneys $20,000.

Defendants claim that the above-quoted regulation gives them the right to offset the entire $100,000 settlement prior to paying plaintiff his full disability pension. Defendants claim that the circuit court erred in ruling that the regulation is invalid.

The trial court fully explained its ruling in a clear and detailed memorandum of decision. We agree with the trial court's reasoning and conclusion on this issue. The relevant parts of the order are as follows:

"Under the common-fund doctrine, 'an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all of those who seek to benefit from it.' *Taylor vs. State Universities Retirement System*, 203 Ill[.] App[.] 3d 513[, 520 (1990)] \*\*\*, quoting from *Baier vs. State Farm Insurance Co.* (1977), 66 Ill[.] 2d 119[, 124] \*\*\*.

The plaintiff and the defendants rely upon *Taylor, supra,* in support of their respective positions concerning the application of the common-fund doctrine to SERS. *Taylor* involved a claim for attorney's fees by the attorney who represented a participant in the State University Retirement System ('SURS') in an occupational disease claim. SURS had already received the full amount of its recoupment from the participant's occupational disease award[,] and Taylor sought 20% of the amount of the recoupment as fees under the common-fund doctrine. SURS is governed by the Illinois Pension Code (40 ILCS 5/15—101 *et seq.* [(West 1996)]). Section 15—153.1 of the Code contains a provision similar to section 14—129 governing SERS.

In this case, it is clear that the plaintiff has established the general requirements for applying the common-fund doctrine: (1) the fund with respect to which fees are sought was created as a result of legal services performed by plaintiff's attorneys; (2) the claimant (SERS) did not participate in its creation; and (3) the claimant (SERS) will benefit from the fund, by setoff. *Taylor,* [203 Ill. App. 3d at 520] \*\*\*."

Defendants argue that they reasonably interpret the phrase, "[a]ny amounts provided for a member or his dependents," found in section 14—129, as requiring an offset of the portion of the workers' compensation or occupational disease award that is payable for the worker's legal expenses and attorney fees. According to defendants, "The attorney fees component of such an award is an amount provided for the member's benefit as it satisfies the member's obligation to compensate the attorney whose services helped to procure the award."

We find it impossible to follow this line of reasoning without concluding that plaintiff does *not* fully benefit from the attorney's services under these circumstances. Here, plaintiff was required by statute to obtain a ruling from the Industrial Commission prior to obtaining his full disability pension from SERS. SERS did not participate in plaintiff's claim for workers' compensation benefits, but SERS is allowed to offset plaintiff's workers' compensation award, paying plaintiff a lesser amount during the offset period than the amount of plaintiff's full disability pension. SERS clearly benefits from the services of plaintiff's attorney. Therefore, the trial court was correct in finding that the common-fund doctrine applies to the facts of this case and did not err in finding SERS's regulation to be invalid.

Defendants argue that the *Taylor* case was wrongly decided and that we should decline to follow it. Defendants contend that the *Taylor* court erred by rejecting the argument that the common-fund doctrine should not apply to SURS, as it is an administrative agency. Defendants quote *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 115 (1976), for the proposition that the common-fund doctrine "is founded on the inherent equity jurisdiction of the courts [citation] and thus has no application to administrative agencies, whose powers are strictly confined to those granted in their enabling statutes." According to defendants, the *City of Chicago* case prohibits the application of the common-fund doctrine to administrative agencies such as SERS and SURS. Defendants' analysis is flawed.

In the *City of Chicago* case, an administrative agency awarded a successful litigant attorney fees. The supreme court found that the agency had no statutory authorization for such an award. By contrast, in the case at bar, the administrative agency that will approve the portion of the settlement applied to an attorney's fee is the Industrial Commission. The Industrial Commission does have statutory authority for such an approval of an attorney's fee. 820 ILCS 305/16 (West 1996). The trial court assessed whether SERS was authorized by section 14—129 to offset the portion of plaintiff's workers' compensation

award that plaintiff will be required to pay his attorney. The trial court correctly found that the regulation requiring that attorney fees and other legal expenses be included in the offset formula is invalid. The trial court properly exercised its "inherent equity jurisdiction" to find that SERS cannot validly offset the portion of plaintiff's workers' compensation award payable as attorney fees and other legal expenses. *City of Chicago*, 65 Ill. 2d at 115. The trial court did not err by following *Taylor* in its application of the common-fund doctrine to an administrative agency.

The underlying justification of the common-fund doctrine is to prevent the unjust enrichment of a beneficiary of funds where the beneficiary played no role in creating the fund from which it stands to benefit. *Scholtens v. Schneider*, 173 Ill. 2d 375, 385 (1996). The doctrine is a common law rule of general application, applicable to "all funds created, increased or preserved by a party in which others have an ownership interest." *Scholtens*, 173 Ill. 2d at 386. In *Scholtens*, the supreme court thoroughly examined the history of the common-fund doctrine and held that ERISA (the Employee Retirement Income Security Act) does not preempt application of the common-fund doctrine to ERISA retirement plans. *Scholtens*, 173 Ill. 2d at 386. Although SERS is not covered by ERISA (*Matsuda v. Cook County Employees' & Officers' Annuity & Benefit Fund*, 278 Ill. App. 3d 378, 385 (1995), *aff'd*, 178 Ill. 2d 360 (1997)), the ruling in *Scholtens* is readily analogous to the situation created by SERS. SERS attempted to lock in benefits that it does not participate in creating but that workers, who have rights to disability income from SERS, are required to obtain prior to receiving their disability income. By enacting a regulation, SERS cannot override the long-standing equitable rule of the common-fund doctrine, and the trial court did not err in applying it to the facts of this case.

## C. CONCLUSION

For all of the reasons stated, we affirm the trial court's entry of summary judgment in favor of plaintiff and the judgment order and permanent injunction entered on January 17, 1997.

Affirmed.

WELCH, P.J., and CHAPMAN, J., concur.