241 P.3d 15 (2010)
Cindy L. ROBINSON, Appellee,
v.
CITY OF WICHITA EMPLOYEES' RETIREMENT BOARD OF TRUSTEES and The City of Wichita, Kansas, Appellants.
No. 102,217.
Supreme Court of Kansas.
October 8, 2010.
*18 Brian K. McLeod, deputy city attorney, of Wichita, argued the cause and was on the briefs for appellants.
David P. Calvert, of David P. Calvert, P.A., of Wichita, argued the cause and was on the brief for appellee.
PER CURIAM:
Cindy Robinson, a former employee of the City of Wichita, filed a claim for disability retirement benefits with the City of Wichita Employees' Retirement Board of Trustees (Retirement Board). The Retirement Board calculated Robinson's disability retirement benefit and then reduced it by the entire amount of a workers compensation award that Robinson had already obtained. This deduction resulted from the application of Section 2.28.150(d)(3) of the Wichita City Code (Wichita Code), which requires that "[a]ny amount received under the State Worker's Compensation Act (except medical expenses) shall be deducted from the disability retirement benefit." The issue before us is whether the amount to be deducted from the disability retirement benefit is the entire workers compensation award or the amount of the award remaining after payment of Robinson's attorney fees.
We conclude the Retirement Board reasonably decided that Wichita Code Section 2.28.150(d)(3) does not except attorney fees from the deduction, properly rejected policy arguments in light of the unambiguous provision, and correctly refused to apply the common-law doctrine that requires sharing of attorney fees by those who benefit from a common fund. Therefore, we affirm the Retirement Board's decision and reverse the district court's decision, which in an administrative appeal had reversed the Retirement Board.

FACTS
Robinson suffered employment-related injuries to her bilateral upper extremities as a gardener employed by the City of Wichita. The date of injury was April 5, 2002. Robinson filed a claim for workers compensation benefits and entered into an agreed award that totaled $125,000. Per a prior attorney fee agreement, approved in the workers compensation *19 proceeding, Robinson's workers compensation attorney received a 25 percent contingency fee for his work on the case, or $31,250. This amount was paid out of the workers compensation award, with a pro rata share deducted from Robinson's bi-weekly temporary total disability benefits.
In June 2008, Robinson filed her disability retirement claim with the Retirement Board. The Retirement Board approved Robinson's request, retroactively effective July 20, 2002, but reduced the amount of available disability retirement benefits by $125,000, the entire amount awarded for workers compensation benefits. The Retirement Board determined that the deduction was required under Wichita Code Section 2.28.150(d)(3).
Robinson filed a request to modify the Retirement Board's award, arguing that the deduction should not include the workers compensation attorney fees because, although she was awarded $125,000 in workers compensation benefits, she did not actually "receive" the portion that would be paid to her attorney. In other words, the workers compensation deduction should have been reduced to $93,750 ($125,000 minus $31,250 in attorney fees). The Retirement Board, after conducting a discussion and hearing statements of counsel on this matter of first impression, issued its final decision, denying Robinson's request for modification and determining "to keep its current practices and ordinances in place."
Robinson filed an appeal in the district court pursuant to K.S.A. 60-2101(d). The district court agreed with Robinson and found that the Retirement Board incorrectly calculated her disability retirement benefits. The district court concluded the Retirement Board was only entitled to deduct the amount of workers compensation benefits "actually received" by Robinson and should not have included attorney fees in the deduction. In the district court's journal entry of judgment, the court based its decision on five findings: (1) reducing the disability retirement benefit by the amount of the workers compensation attorney fees "creates a hardship" on Robinson "and will not be permitted because that action thwarts the very purpose of the disability retirement plan"; (2) "Kansas, along with virtually every other state and the federal courts, has adopted the common fund doctrine which permits a party who creates, preserves or increases the value of a fund in which others have an interest, which includes the Respondent's retirement fund, to be reimbursed from that fund for attorney fees"; (3) deducting the attorney fees penalizes Robinson for exercising her statutory right to recover workers compensation benefits; (4) the Retirement Board's action and its interpretation of the ordinance was arbitrary and capricious; and (5) the Retirement Board could not rely on a "long-standing policy which it contends permits it to deduct the entire $125,000 including attorney fees because there is no such policy."
The district court reversed the Retirement Board's decision and granted judgment for Robinson in the amount of $31,250 plus costs. The Retirement Board now makes a timely appeal. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

ANALYSIS
Robinson's appeal from the Retirement Board's decision is based on K.S.A. 60-2101(d). This statute confers jurisdiction on a district court to review the action of a political subdivision exercising "judicial or quasi-judicial functions." In such circumstances, the district court is limited to determining if the Retirement Board's decision was within its scope of authority, was substantially supported by evidence, or was fraudulent, arbitrary, or capricious. On appeal from the district court, an appellate court reviews the Retirement Board's decision as though the initial appeal had been made directly to the appellate court. See Butler v. U.S.D. No. 440, 244 Kan. 458, 464, 769 P.2d 651 (1989).
In this case, Robinson has not argued that the Retirement Board acted outside its scope of authority. Nor, at least before us, is there any real controversy about the facts. The details of Robinson's workers compensation and disability claims are not disputed, and the Retirement Board essentially agrees with the factual determinations regarding Robinson's difficult financial situation and the first-impression nature of the Retirement Board's *20 ruling. Instead, her focus and the district court's ruling is that the Retirement Board was arbitrary and capricious in its interpretation of the Wichita Code.
Consequently, we must examine whether the Retirement Board's actions met the arbitrary and capricious standard that this court has adopted as a standard for appellate review under K.S.A. 60-2101(d). "This court has defined `arbitrary' to mean without adequate determining principles, not done or acting according to reason or judgment;... and `capricious' as changing, apparently without regard to any laws." Dillon Stores v. Board of Sedgwick County Comm'rs, 259 Kan. 295, Syl. ¶ 3, 912 P.2d 170 (1996). When the standard is applied in the context of a board or agency interpreting a statute, ordinance, or regulation, the board or agency is deemed to have acted arbitrarily and capriciously when its decision was not based on a reasonable interpretation of the provision's terms and was not made in good faith. Trujillo v. Cyprus Amax Minerals Ret. Plan Comm., 203 F.3d 733, 736 (10th Cir.2000). As we apply this standard to the district court's decision, we will first discuss the reasonableness of the Retirement Board's interpretation of the Wichita Code provision. We will then consider the district court's rationale for its determination that the action was arbitrary and capricious. Finally, we will consider the common-law doctrine regarding the obligation to pay attorney fees incurred in an action that establishes, preserves, or increases a common fund.

A. Interpretation of Wichita Code Section 2.28.150(d)(3)

In arguing that the Retirement Board did not reasonably interpret Wichita Code Section 2.28.150(d)(3), Robinson insists that the phrase "any amount received" includes only the workers compensation benefits actually received by the injured employee after any attorney fees have been paid. Essentially, Robinson asserts that it was erroneous to use $125,000 in the calculation of the disability retirement benefits because she did not actually receive that amount, having elected to have her workers compensation award reduced by the amount of attorney fees related to the compensation hearing. In other words, she interprets the word "received" to mean "net receipts" as opposed to "any amount awarded." See Faust v. Walker, 945 A.2d 212, 214 (Pa.Super.2008) ("common meaning of `net proceeds' is `[t]he amount received in a transaction minus the costs of the transaction [such as expenses or commissions]'").
In response, the Retirement Board suggests that the district court and this court should grant deference to its interpretation of the provision and that its interpretation was reasonable and consistent with commonly accepted rules of statutory interpretation. As to the first point, this court has previously stated that "interpretation of a statute is a necessary and inherent function of an agency in its administration or application of that statute" and that "the legal interpretation of a statute by an administrative agency that is charged by the legislature with the authority to enforce the statute is entitled to great judicial deference." Mitchell v. Liberty Mut. Ins. Co., 271 Kan. 684, Syl. ¶ 4, 24 P.3d 711 (2001). Nevertheless, we have recently been reluctant to apply the doctrine of operative construction when faced with questions of law on undisputed facts. See Fieser v. Kansas Bd. of Healing Arts, 281 Kan. 268, 270-71, 130 P.3d 555 (2006). Instead, we have concluded that an administrative agency's interpretation of a statute is not conclusive, and final construction of a statute always rests with the courts. Graham v. Dokter Trucking Group, 284 Kan. 547, 554, 161 P.3d 695 (2007); Fieser, 281 Kan. at 270, 130 P.3d 555; Foos v. Terminix, 277 Kan. 687, 692-93, 89 P.3d 546 (2004). Hence, we do not grant deference to the Retirement Board's interpretation.
Instead, the interpretation of Wichita Code Section 2.28.150(d)(3) presents a question of law over which we have unlimited review. See Double M Constr. v. Kansas Corporation Comm'n, 288 Kan. 268, 271, 202 P.3d 7 (2009). In conducting that review, a court applies the same rules to interpreting a municipal ordinance as we would when interpreting a statute. Weeks v. City of Bonner Springs, 213 Kan. 622, 629, 518 P.2d 427 *21 (1974). Under those rules, when a statute or municipal ordinance is plain and unambiguous, the court must give effect to express language, rather than determine what the law should or should not be. This court will not speculate on legislative intent and will not read the provision to add something not readily found in it. If the provision's language is clear, there is no need to resort to statutory construction. Graham, 284 Kan. at 554, 161 P.3d 695; Steffes v. City of Lawrence, 284 Kan. 380, 386, 160 P.3d 843 (2007).
Applying these rules to the interpretation of similar statutes, courts in California, Kentucky, and Washington as well as the Tenth Circuit Court of Appeals have rejected arguments similar to Robinson's. As we will discuss, the reasoning of these cases applies to our interpretation of Wichita Code Section 2.28.150(d)(3).
In the California case of Garietz v. City of Oakland, 20 Cal.App.3d 115, 97 Cal.Rptr. 374 (1971), the claimants were former members of the police and fire departments who sustained a disability in the course of employment and subsequently applied for and received benefits under California labor codes. The claimants appealed when the City deducted the total amount of workers compensation benefits, including attorney fees, from the pension benefits. They pointed out that when the entire amount of the workers compensation award is deducted from the disability retirement allowance, the claimant is out of pocket the amount of workers compensation attorney fees.
A city charter provided for the Police and Fire Retirement System, and the retirement provisions of the charter stated, in part:
"`It is the intention of this section that allowances granted to or on account of members of the System for injury, illness or death incurred in the performance of duty shall not be cumulative with benefits under the Labor Code of California awarded as the result of the same injury, illness, or death ...
"`(a) If the amount [of benefits awarded] is paid in one sum or in installments equal to or greater than such salary, retirement allowance, or other benefit, such member or dependant shall not receive any salary, retirement allowance, or other benefit until the total amount of the salary, retirement allowance, or other benefit which would otherwise be payable equals the total amount received under the Labor Code.
"`(b) If the amount [of benefits awarded] is paid in installments less than such salary, retirement allowance, or other benefit, the salary, retirement allowance or other benefit, shall be reduced so that the total salary, retirement allowance, or other benefit plus the amounts received under the Labor Code will equal the salary, retirement allowance or other benefit which would otherwise be due.
"`(c) In either case any award specifically granted for medical, surgical, or hospital expenses shall not reduce the salary, retirement allowance, or other benefit.'" (Emphasis added.) Garietz, 20 Cal.App.3d at 118 n. 1, 97 Cal.Rptr. 374 (quoting city charter section 249[2]).
The claimants contended that the language of the first paragraph prohibiting cumulative benefits and the emphasis on "paid" and "received" in the subdivisions created an ambiguity that had to be liberally construed in their favor to prohibit any deduction from including the amount of attorney fees. The claimants argued that in the absence of any language permitting the deduction of certain amounts, no deduction of workers compensation attorney fees should be allowed and that the City should bear the cost of the claimants' attorney fees.
The California Court of Appeals noted that the state's Labor Code provided for certain liens against any sum ordered paid as compensation by the Workers' Compensation Appeals Board. In addition to attorney fees, the Labor Code provided that the Board may "`determine and allow as liens against any sum to be paid as compensation'" various other expenses incurred by or on behalf of the injured employee. Garietz, 20 Cal. App.3d at 118, 97 Cal.Rptr. 374 (quoting Labor Code Section 4903). The Garietz court determined that the legislature did not intend that only the net amount "received" by the employee may be considered in deducting the award from pension payment. If *22 only the net amount received could be considered, not only would attorney fees have to be excluded, but other categories of statutory liens would also have to be excluded. The Garietz court further observed that the workers compensation provision of the Labor Code was in effect when the city charter was enacted; therefore, if there was any conflict between the city charter and the workers compensation provisions, the latter must prevail. Regardless, reading the city charter in this context, the Garietz court concluded there was no ambiguity. This conclusion was also supported by the notion that an employee is not entitled to a double recovery of indemnity for an industrial disability. Garietz, 20 Cal.App.3d at 119, 97 Cal.Rptr. 374.
In the Kentucky decision of Rue v. Kentucky Retirement Systems, 32 S.W.3d 87 (Ky.App.2000), the claimant was unable to return to work after sustaining a back injury in the course of his employment as a mechanic with the Kentucky State Police. In addition to applying for disability retirement benefits, the claimant also applied for social security benefits and workers compensation benefits. The claimant appealed the retirement system's calculation of total benefits when it used the gross amount of his workers compensation award instead of the reduced amount he would actually receive after deducting attorney fees.
The Kentucky Court of Appeals observed that the plain language of the applicable Kentucky statute stated that the monthly disability benefit was to equal the employee's final pay minus amounts received from federal social security or a workers compensation award. Spouses' and children's benefits were specifically excluded, but there was no mention of attorney fees. Noting that some specific exclusions were mentioned, the Rue court rejected the claimant's contention that the amount used in establishing the workers compensation component of the combined monthly benefit should be reduced by the amount of attorney fees related to the workers compensation proceeding. The Rue court reasoned that the statute was clear in providing which allowances were not to be considered in calculating benefits. The legislature was capable of wording the statute in such a way as to express the intent to reduce the amount of workers compensation attorney fees, but it did not do so.
Additionally, the Rue court observed that Kentucky is not one of several states that treat attorney fees as an "add-on" or double benefit that the employer must pay in addition to the compensation award itself. Instead, under the Kentucky statutory scheme, the payment of legal fees remains at all times the personal responsibility of the claimant. "This is true," said the Rue court, "despite the fact that our statutes require approval of the fee and offer a claimant the option of paying that obligation `up-front' through reduced monthly benefit proceeds." Rue, 32 S.W.3d at 89. The court characterized the reduction of the claimant's workers compensation benefits as a mere "voluntary election as to the manner he would pay that debt." Rue, 32 S.W.3d at 89. Also, permitting a claimant to reduce his or her compensation award in order to satisfy the attorney's entitlement to a fee "is, in reality, offered as a convenience to the claimant." Rue, 32 S.W.3d at 89.
Noting that other jurisdictions with similar statutory schemes have reached comparable results, the Rue court held that to allow the claimant to deduct only his net workers compensation award would provide a benefit not intended by the Kentucky Legislature. Rue, 32 S.W.3d at 89.
In Regnier v. Dept. of Labor and Indus. of State of Washington, 110 Wash.2d 60, 749 P.2d 1299 (1988), the claimant was injured in the course of her employment, and she filed a claim for industrial insurance. The state's Department of Labor and Industries (Department) awarded her disability benefits. Subsequently, the claimant sought and obtained federal social security disability benefits for her injury. As a result, the Department reduced the claimant's state industrial insurance benefits under the language of the state statute which provided that industrial insurance benefits "shall be reduced by an amount equal to the benefits payable under the federal old-age, survivors and disability insurance act," not to exceed a certain amount. Regnier, 110 Wash.2d at 63, 749 P.2d 1299.
*23 Although the claimant had incurred medical and legal expenses in obtaining her social security disability benefits, the district court upheld the decision of the Board of Industrial Insurance Appeals to deny any credit or exemption for the medical and legal expenses.
On appeal, the claimant argued that in computing the reduction in state benefits, she should receive a credit for the medical and legal expenses she incurred in obtaining her federal benefits. This argument was based on 20 C.F.R. § 404.408(d), a regulation governing the computation of federal benefits in cases where a state has not enacted a statute regarding items that may be excluded when calculating a reduction. The claimant argued that this regulation excluded from the process actual legal and medical expenses incurred in gaining state benefits so that, in effect, the claimant would receive a credit. Regnier, 110 Wash.2d at 63, 749 P.2d 1299.
The Washington Supreme Court rejected this notion, unconvinced that the federal regulation required an exemption for medical and legal expenses to be taken from the amount of the reduction in federal benefits. Moreover, even if such an exemption was available from a federal reduction procedure, there was no similar provision under Washington law. Regardless, the Regnier court pointed to the well-known rule that "attorney fees may be recovered only where authorized by a statute, a private agreement between the parties, or a recognized equitable ground," none of which was present in the case. Regnier, 110 Wash.2d at 64, 749 P.2d 1299.
Finding that the legislature "has not seen fit to provide benefits to cover the expenses of establishing eligibility for disability benefits," the Regnier court held it would be inappropriate for the court to create such benefits. Regnier, 110 Wash.2d at 65, 749 P.2d 1299; cf. City of Clearwater v. Acker, 755 So.2d 597, 600 (Fla.1999) (increases in permanent total disability supplemental benefits paid by employer annually should not be included in calculation of disability benefit that is reduced by workers compensation benefits; recalculating reduction every year, so as to include increase in supplemental benefits, would frustrate intended purpose of supplemental benefits which was to give cost-of-living benefit to workers); Waterman v. Caprio, 983 A.2d 841, 843 n. 4 (R.I.2009) (workers compensation settlement, adjusted downward for 15 percent attorney fee, had to be deducted from retirement benefit payments).
In a case discussed by the partiesTrujillo v. Cyprus Amax Minerals Ret. Plan Comm., 203 F.3d 733 (10th Cir.2000)the Tenth Circuit Court of Appeals also considered whether attorney fees should be included in a deduction from disability benefits. There, the claimant brought a state court action under the Employee Retirement Income Security Act (ERISA), challenging the plan administrator's decision to reduce his disability retirement benefits by the total amount of the workers compensation settlement rather than the amount of the settlement minus attorney fees incurred in obtaining the settlement. After the action was removed to federal court, the federal district court ruled in favor of the claimant.
On appeal, the Tenth Circuit held that the ERISA plan administrator did not act arbitrarily and capriciously in determining that the ERISA plan section, which stated that disability benefits would be reduced by the amount of workers compensation benefits "payable" to the participant, required the inclusion of the amount of attorney fees incurred by the participant in obtaining his or her workers compensation settlement. Drawing on definitions of "payable" in Black's Law Dictionary, the Tenth Circuit observed that "payable" could mean "`capable of being paid,'" "`justly due,'" or "`legally enforceable.'" Trujillo, 203 F.3d at 737 (quoting Black's Law Dictionary 1128 [6th ed. 1990]). Also, the court noted that attorney fees were not mentioned in the claimant's settlement, indicating that he agreed to pay fees out of the total award received.
The Tenth Circuit rejected policy-based arguments advanced by the claimant. First, the claimant argued that the plan administrator's decision effectively required him to pay the cost of reducing his own benefits under the plan. Second, he contended that the plan administrator's decision would create "irreconcilable *24 conflicts" between workers compensation attorneys and their clients and "`make it impossible for injured workers to obtain adequate, conflict-free representation.'" Trujillo, 203 F.3d at 738. The Tenth Circuit determined there was no authority to allow such policy arguments to trump the plan administrator's reasonable interpretation of the plan's language. Finally, the Tenth Circuit rejected the claimant's contention that the doctrine of unjust enrichment should preclude the plan administrator from deducting the entire amount of the workers compensation settlement without paying a share of the claimant's attorney fees. Trujillo, 203 F.3d at 738.
Points from the analysis of these cases apply to the Wichita Code requirement that "[a]ny amount received under the State Worker's Compensation Act" be deducted from the disability retirement award. Wichita Code Section 2.28.150(d)(3). First, like the provisions considered in the other jurisdictions, the language is inclusive, referring to "[a]ny amount." Second, like the California provision, the Wichita Code uses the term "received." Black's Law Dictionary does not contain a definition of "received," but Webster's New World Dictionary, Second College Edition, pp. 1884-85 (1974) defines the term as "to get, accept, take, or acquire something; be a recipient." When that meaning is read in context of the entire phrase used in Wichita Code Section 2.28.150(d)(3), the meaning is much the same as the wording considered by the Tenth Circuit and other courts because it would be "[a]ny amount" the claimant gets, accepts, takes or acquires "under the State Worker's Compensation Act." Under the Kansas Workers Compensation Act (Kansas Act), Robinson got, accepted, took, or acquired the entire $125,000 in workers compensation benefits. This common understanding is reflected in a September 2008 letter from Robinson's workers compensation attorney to opposing counsel, in which he stated: "I have taken a fee of 25% of all temporary total disability checks received. The gross amount of those checks is $700.12 every two weeks." (Emphasis added.) Hence, the provision's language supports the Retirement Board's interpretation.
Further, as with the provisions considered in the out-of-state cases we have discussed, the Kansas Act does not award attorney fees in addition to the workers compensation award or make the employer responsible for the attorney fees. The "American Rule" is well established in Kansas so that, in the absence of statutory or contractual authorization, each party to the litigation is responsible for his or her own attorney fees, and the Kansas Act does not create an exception. See Farm Bureau Mut. Ins. Co. v. Kurtenbach, 265 Kan. 465, 479-80, 961 P.2d 53 (1998) (the "`American rule' ... which is well established in Kansas, is that in the absence of statutory or contractual authorization, each party to litigation is responsible for his or her own attorney fees"); 8 Larson's Workers' Compensation Law § 133.01 ("The obligation to bear one's own legal fees, then, has become established as a necessary evil, which each client must contrive to bear as cheerfully as he or she can."); see also Hodges v. Johnson, 288 Kan. 56, 70, 199 P.3d 1251 (2009) ("In Kansas, courts are not permitted to award attorney fees without specific statutory authorization.").
We also note that several provisions of the Kansas Act indicate that the award belongs to the claimant, not the attorney. As in the Kentucky statute, K.S.A. 44-536(b) provides that "[a]ny claims for attorney fees not in excess of the limits provided in this section and approved by the director shall be enforceable as a lien on the compensation due or to become due." (Emphasis added.) Further, subject to exceptions not pertinent in this case, "[a]ll attorney fees for representation of an employee ... shall be only recoverable from compensation actually paid to such employee." (Emphasis added.) K.S.A. 44-536(f). In other words, under the Kansas Act the entire award is deemed to be actually paid, awarded to, and received by the claimant, who is responsible for payment of his or her attorney fees.
In addition, as with the Kentucky statute, the Kansas Act requires the filing of an attorney fee contract with the director of workers compensation and provides that both the contract and the claimed attorney fees *25 must be reviewed and approved. K.S.A. 44-536(b). Once the contract is approved, the Kansas Act facilitates the payment of the attorney fees by allowing a deduction from the award that is sent directly to the attorneya type of bill payer service. K.S.A. 44-536. Yet, the claimant remains responsible for paying the attorney fees and discharging his or her obligation to the attorney. See Feissner v. Prince George's Co., 282 Md. 413, 417-18, 384 A.2d 742 (1978) (conducting comparable analysis, court concludes statutory lien for attorney fees merely alters the manner in which liability for fees is discharged; it makes employee no less responsible for payment of fee). Thus, a claimant gets, acquires, or takes the full amount of the award.
An additional consideration discussed in the Kentucky case applies to our analysis of Wichita Code Section 2.28.150(d)(3). That consideration is that the provision specifically mentions one exception but does not mention attorney fees. Specifically, the Wichita Code provides that disability retirement benefits will not be reduced by the portion of the workers compensation award that is for medical expenses. As aptly noted by the Kentucky court when discussing that its exemption for spouses' and children's benefits was silent regarding attorney fees, neither an agency (in this case, the Retirement Board), a district court, nor an appellate court is free to add words to a statute or ordinance in order to enlarge the scope beyond that which can be gleaned from a reading of the words used by the drafters. Rue, 32 S.W.3d at 89; see Zimmerman v. Board of Wabaunsee County Comm'rs, 289 Kan. 926, 939-40, 218 P.3d 400 (2009) (when statute is plain and unambiguous, an appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there). Here, the Wichita Code makes no reference to excluding attorney fees and does not contain language regarding "net proceeds."
Hence, we conclude the Retirement Board's interpretation of Wichita Code Section 2.28.150(d)(3) was a reasonable interpretation in that it was consistent with principles of statutory interpretation and the interpretation of similar provisions by other courts. The Retirement Board's interpretation was not arbitrary or capricious. See Dillon Stores v. Board of Sedgwick County Comm'rs, 259 Kan. 295, Syl. ¶ 3, 912 P.2d 170 (1996) (defining arbitrary or capricious).

B. District Court's Rationales for Determining Board's Interpretation Was Arbitrary

Three of the rationales stated by the district court related to the question of whether the Retirement Board's interpretation of Wichita Code Section 2.28.150(d)(3) was reasonable. First, the district court concluded such an interpretation was contrary to the stated purposes of the retirement disability fund. Second, the district court determined the interpretation was contrary to public policy because it penalized Robinson for the exercise of her rights under the Kansas Act. Third, the district court noted the Retirement Board had not previously determined the issue and, consequently, there was no long-standing policy.

1. Considering Purposes of Disability Benefits

In the first of these three rationales, the district court discounted the plain language of subsection (d)(3) of Wichita Code Section 2.28.150 and instead focused on the first half of the self-described "purpose" of the retirement plan, as laid out in Wichita Code Section 2.28.010, which states:
"The purpose of the Wichita employees' retirement plan, hereinafter referred to as the `retirement plan,' is to establish an orderly means whereby noncommissioned personnel employed by the city who have attained retirement age or who have become disabled as set forth in this chapter may be retired from active service without prejudice and without inflicting a hardship on the employees retired, and to enable employees to accumulate reserves for themselves and their dependents to provide for old age, disability, death and termination of employment, and for the purpose of effecting economy and efficiency in the administration of governmental affairs."
*26 Citing this provision, the district court specifically found that "[t]he reduction by the Board of the disability retirement benefits by the amount of attorney fees retained by petitioner's counsel in her workers compensation case creates a hardship on the petitioner and will not be permitted because that action thwarts the very purpose of the disability retirement plan." In support of this finding, the court detailed Robinson's difficult financial situation.
The district court did not explain, however, why Robinson's personal financial statusa case-specific factrequires the interpretation of "any amount received" under the Wichita Code to be the equivalent of "net receipts," i.e., the award after deduction of attorney fees. Nowhere does Wichita Code Section 2.28.150(d)(3) require that the claimant's personal financial status be considered. In addition, Robinson cites no authority for the notion that an individual's disability income must meet a certain level of adequacy. Finally, as the Retirement Board argues, by emphasizing the purpose provision of the Wichita Code, the district court essentially found that the general purpose provision, Section 2.28.010, controls over the specific deduction provision of Wichita Code Section 2.28.150(d)(3). Yet, well-established rules of construction hold that specific statutes control over general ones. Ft. Hays St. Univ. v. Fort Hays State University Ch., Am. Ass'n of Univ. Profs., 290 Kan. 446, 228 P.3d 403 (2010).
Also, in focusing on the general purpose provision, the district court changed the universal applicability of the deduction provision because performing a prejudice and hardship analysis requires a case-by-case consideration. This could lead to inconsistent results, bypassing systematic calculations in order to consider the facts of each case. The Retirement Board argues that this case-by-case approach would jeopardize compliance with a different portion of Wichita Code Section 2.28.010, specifically that portion which states: "It is the intent that the Wichita employees' retirement plan be established as a qualified governmental pension plan under Section 401(a) and 414(d) of the Internal Revenue code." Section 401(a) of the Internal Revenue Code requires that actuarial assumptions be specified in a pension plan in order for the plan to qualify for tax exempt status. See 26 U.S.C. § 401(a)(25) (2006). Additionally, 26 C.F.R. § 1.401-1(b)(1)(i), which was issued under section 401(a) of the Internal Revenue Code, requires pension plans to provide "definitely determinable benefits" in order to meet the requirements for special tax treatment. Eaton v. Onan Corp., 117 F.Supp.2d 812, 847 (S.D.Ind.2000). The Retirement Board contends that this objective would be defeated, and the tax status of the retirement plan imperiled, if the Board or the courts were to apply the general purpose provision of the Wichita Code to use discretion in calculating benefits for individuals based on hardship.
The Retirement Board makes a valid point. The district court did not consider the possibility that it is the City's act of providing determinable disability retirement benefits to all eligible retirees which fulfills the purpose of the City's retirement plan. Focusing on the terms "prejudice" and "hardship" in the purpose provision of the Wichita Code, the district court essentially ignored the plain language in Section 2.28.150(d)(3).

2. Penalty

In a closely related analysis, the district court found that the Retirement Board's action of "deducting [workers compensation] attorney fees from [Robinson's] disability retirement penalizes her for exercising her statutory right to recover workers compensation benefits." The court stated that "[b]ecause she sought to exercise her right to recover those [workers compensation] benefits as well as seek compensation and reimbursement for medical expenses, [Robinson] will actually end up with less because the Board has required her to pay the attorney fees to recover the money for the Board." In other words, Robinson was prejudiced by the Retirement Board's decision requiring her to pay the workers compensation attorney fees.
According to the minutes from the Retirement Board's meeting on October 15, 2008, Robinson's city retirement disability payment was calculated to be $1,281.45 per month. *27 Her workers compensation payment, before the 25 percent attorney fee deduction, was approximately $1,400 per month (after attorney fees, the monthly workers compensation payment was $1,050 per month). The Retirement Board acknowledged that Robinson's outcome was negatively affected by the order in which she applied for both benefits. The Board noted:
"The dollar amount collected over a period of years through the Pension System [generally] exceeds the Worker's Compensation settlement upon application of the required offset. ... [Robinson] actually does come out a bit worse by virtue of having done things the way she did because the Worker's Compensation benefit was higher, but it was not more than 25% higher."
Even so, Robinson fails to show how her payment of workers compensation attorney fees, by itself, is a penalty. The provisions in the Wichita Code do not specifically show the intent to maximize the injured employee's benefits. Further, Kansas appellate courts have determined that K.S.A.2009 Supp. 44-501(h), which allows employer contributions in private pension plans, paid to retired injured workers, to be reduced by the amount of employer-funded workers compensation benefits paid to the same workers, is not a penal statute. See, e.g., Robinson v. Southwestern Bell Telephone Co., 39 Kan.App.2d 342, 347, 180 P.3d 597 (2008), overruled on other grounds Bergstrom v. Spears Manufacturing Co., 289 Kan. 605, 214 P.3d 676 (2009). The statutory purpose and function is much the same as the ordinance at issue in this case and, therefore, to suggest that the Wichita Code at issue imposes a penalty upon former City employees would be contrary to the analysis in Robinson.
Further, provisions allowing an award of attorney fees are not passed to benefit the attorney or to burden litigants. Rather, they are passed to enable litigants to obtain competent counsel. Hatfield v. Wal-Mart Stores, Inc., 14 Kan.App.2d 193, 199, 786 P.2d 618 (1990); see Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir.1984); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 719 (5th Cir.1974), abrogated on other grounds Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Robinson's contingency fee contract enabled her to obtain counsel, and she received economic benefits by hiring counsel in her workers compensation case.
Therefore, we conclude Robinson has not been penalized by having to pay her attorney a fee deemed reasonable by the workers compensation director.

3. No Long-standing Policy

In addition, the district court focused on the fact that the issue of including the attorney fees in the amount of the reduction had never been previously presented to the Retirement Board. Consequently, the district court questioned the Board's statements that it hesitated to veer away from its "current practice" of utilizing the full workers compensation award in its calculation of available disability retirement benefits and that a deduction of workers compensation attorney fees might require a "written rule."
Because the district court considered the Retirement Board's interpretation of Wichita Code Section 2.28.150(d)(3) to be arbitrary and capricious, it did not consider the fact that the existence of the ordinance itself established a long-standing policy. Because we have reached the opposite conclusion and have found the Retirement Board's interpretation to be reasonable, we do not have the same difficulty and can conclude the policy was long-standing, having been adopted on passage of the ordinance.
Further, the record discloses that the Retirement Board examined the statutes and regulations related to other public plans with similar deduction provisions. Our independent review of those provisions underscores the reasonableness of the Retirement Board's decision because, in other Kansas contexts involving the reduction of one type of benefit because of the entitlement to another benefit, this court has consistently held that where two governmental benefits arise from a common cause, there is no entitlement to both. For example, the Kansas Act, specifically K.S.A.2009 Supp. 44-501(h), provides:

*28 "If the employee is receiving retirement benefits under the federal social security act or retirement benefits from any other retirement system, program or plan which is provided by the employer against which the claim is being made, any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits, less any portion of any such retirement benefit, other than retirement benefits under the federal social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment." (Emphasis added.)
Applying this provision, this court and the Court of Appeals have noted that the purpose of this statutory reduction is to prevent wage loss duplication. Injured Workers of Kansas v. Franklin, 262 Kan. 840, 872, 942 P.2d 591 (1997); Lleras v. Via Christi Regional Med. Center, 37 Kan.App.2d 580, Syl. ¶ 5, 154 P.3d 1130 (2007); McIntosh v. Sedgwick County, 32 Kan.App.2d 889, 897, 91 P.3d 545, rev. denied 278 Kan. 846 (2004). If a claimant is injured before he or she retires, the employer is entitled to the statutory reduction, as an injured employee is not entitled to recover both retirement benefits and workers compensation benefits beyond the value of the functional impairment. McIntosh, 32 Kan.App.2d at 894, 897-98, 91 P.3d 545. Conversely, if an employee retires and then returns to work to supplement his or her income, the reduction does not apply, as the employee's receipt of both workers compensation benefits and social security retirement benefits are not duplicative. Dickens v. Pizza Co., 266 Kan. 1066, 1071, 974 P.2d 601 (1999). Neither K.S.A.2009 Supp. 44-501(h) nor Wichita Code Section 2.28.150(d)(3) contains a provision requiring the deduction to be reduced by the amount of attorney fees incurred in obtaining the benefits that reduce the pension or disability retirement benefit.
Similarly, the Kansas Public Employees Retirement System Act (KPERS), K.S.A. 74-4901 et seq., deduction provisions do not provide for adjustments due to attorney fees. For example, disability payments for certain correctional employees are addressed in K.S.A. 74-4914e, which provides in part:
"Benefits payable under this section shall be reduced by the original amount of any disability benefits received under the federal social security act or the workers compensation act. ... In no case shall a correctional employee who is entitled to receive benefits under this section receive less than $100 per month." (Emphasis added.) K.S.A. 74-4914e(11).
The above statute references the "original amount" and does not provide for a reduction for any attorney fees the retiree incurred in pursuing social security or workers compensation benefits.
We also note that the Kansas Legislature has obviously become aware of the attorney-fee-adjustment argument in the context of KPERS and has clearly rejected it, as seen in another provision, K.S.A.2009 Supp. 74-4927(1)(B). That statute provides for the deduction of social security and workers compensation benefits from long-term disability benefit payments and specifically states: "As used in this section, `workers compensation benefits' means the total award of disability benefits payments under the workers compensation act notwithstanding any payment of attorney fees from such benefits as provided in the workers compensation act." (Emphasis added.) K.S.A.2009 Supp. 74-4927(1)(B).
Hence, although the Retirement Board had not considered the attorney fee issue, its interpretation of Wichita Code Section 2.28.150(d) was consistent with similar provisions in Kansas law and with the language of the provision. Because the Retirement Board applied the clear language of the provision, the fact that the interpretation was a matter of first impression does not render it arbitrary. Consequently, we conclude none of the rationales stated by the district court established that the Board's interpretation was unreasonable or contrary to established principles.

*29 C. Common Fund

In addition to considering the interpretation of Wichita Code Section 2.28.150(d)(3), the district court relied on another conceptthe common fund doctrine. In essence, the district court reasoned that regardless of the code provision this common-law concept entitled Robinson to recover the attorney fees from the Retirement Board. The Board urges this court to reject this doctrine in light of the language in Wichita Code Section 2.28.150(d)(3).
The common fund doctrine permits a party who creates, preserves, or increases the value of a fund in which others have an interest to be reimbursed from that fund for litigation expenses incurred, including attorney fees. The doctrine reflects the traditional practice in courts of equity, and it stands as a well-recognized narrow exception to the general principle that requires every litigant to bear his or her own attorney fees. Gigot v. Cities Service Oil Co., 241 Kan. 304, 737 P.2d 18 (1987). "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. [Citation omitted.]" Gigot, 241 Kan. at 313, 737 P.2d 18. For example, the common fund doctrine generally provides the basis for awarding attorney fees in class actions. The rationale for awarding attorney fees out of a common fund is that the attorney's services benefit the fund by creating, increasing, or preserving the fund. Moore v. St. Paul Fire Mercury Ins. Co., 269 Kan. 272, 277, 3 P.3d 81 (2000); see County Workers Comp. Pool v. Davis, 817 P.2d 521, 526 (Colo.1991) (basic rule of equity permits apportionment of attorney fees and costs under circumstances where party has been successful in creating a fund from which other "passive beneficiaries" derive monetary benefit).
The common fund doctrine relied on by the district court in this case was not mentioned in the California, Kentucky, or Washington cases, or the Tenth Circuit case we previously discussed, which were based on common rules of statutory interpretation. (The Tenth Circuit did consider and reject the doctrine of unjust enrichment.) Nevertheless, the common fund doctrine has been discussed in similar cases, and two lines of cases have emerged.
In support of Robinson's argument, she cites Leonard v. Southwestern Bell Corp. Disability, 341 F.3d 696 (8th Cir.2003), which is representative of one line of cases. There, Southwestern Bell had reduced the claimant's disability retirement plan by the entire workers compensation award of $100,000. Southwestern Bell argued that the goal of employee benefit plans is to provide a safety net for employees, i.e., to provide a minimum amount of compensation for disabled employees. The Eighth Circuit Court of Appeals stated that allowing the plan to reduce the award by the amount of the workers compensation award and the attorneys fees and costs incurred by the employee in obtaining that award contradicts this goal. "Such a practice would place employees in worse positions than they would have been in had they not tried to obtain a worker's compensation award in the first place." Leonard, 341 F.3d at 705.
Additionally, the Leonard court was concerned with the inequitable results this practice could produce. "Assuming that an employer is not self-insured for worker's compensation, Southwestern Bell's argument would result in a windfall to an employee benefit plan and a detriment to an employee when the employee elects to assert rights under a worker's compensation law." Leonard, 341 F.3d at 705. The employer would be able to reduce benefits, dollar for dollar, for the total amount of the workers compensation award, while the employee, who asserted statutory rights and obtained an additional recovery, would be worse off, having only received the amount of the award remaining after payment of attorney fees and costs. Leonard, 341 F.3d at 705-06.
Given these two concerns, the Leonard court refused to allow the reduction to include the amount a plan participant had to pay in attorney fees and costs to obtain nonplan benefits, absent an explicit statement in the plan that administrators had discretion to treat fee and cost portions of such payments as the "same general character" *30 as plan benefits. Leonard, 341 F.3d at 706.
The common fund doctrine was also applied in Young v. Mory, 294 Ill.App.3d 839, 228 Ill.Dec. 965, 690 N.E.2d 1040 (1998). There, Young had reached a tentative settlement of workers compensation claims with his employer for $100,000, of which $20,000 was for attorney fees. Young also sought occupational disability benefits from the State Employees' Retirement System of Illinois (SERS). Before finalizing the settlement, Young sought a declaratory judgment to enjoin SERS from reducing his retirement benefits by the attorney fees portion of the pending settlement.
Under the Illinois Pension Code, SERS was entitled to a deduction from benefits for any workers compensation award. Young, 294 Ill.App.3d at 847, 228 Ill.Dec. 965, 690 N.E.2d 1040 (citing 40 ILCS 5/14-129 [West 1996]). SERS had adopted a regulation which provided that the amount considered for the purpose of a deduction would not be reduced by any legal expenses granted in the workers compensation award. Hence, the pension benefit was reduced by the entire workers compensations award, including the attorney fees.
The Illinois Court of Appeals found that the regulation was invalid because SERS clearly benefited from the services of Young's attorney in that SERS would be able to reduce the pension award by the full amount of the workers compensation award, including the amount paid for attorney fees. As such, the common fund doctrine applied and SERS was responsible for the fees incurred by the claimant in seeking workers compensation benefits.
The common fund doctrine was also applied in a Montana case quite similar to the one at hand. In Flynn v. State Compensation Ins. Fund, 312 Mont. 410, 60 P.3d 397 (2002), the claimant suffered repetitive work-related injuries and began receiving workers compensation benefits. He subsequently filed a claim for and began receiving social security disability benefits. Because of the disability benefits, the State Compensation Insurance Fund notified the claimant that his workers compensation payments would be reduced. The claimant filed a petition in the Workers Compensation Court in which he alleged that the State Fund should pay a proportionate share of the attorney fees he incurred to recover social security disability benefits. He reasoned that the State Fund benefited from his social security disability award as much as he did because it could now reduce the workers compensation benefits paid to him by one-half the amount of the social security disability award.
The Workers Compensation Court rejected the claimant's attorney fee claim for three reasons. First, it cited Stahl v. Ramsey Construction Co., 248 Mont. 271, 811 P.2d 546 (1991), for the proposition that no statutory or contractual authority supported the apportionment claim. Second, the court found that the common fund doctrine "`has no application here [because] Claimant is not seeking attorney fees for others who may benefit by this decision, rather he is seeking attorney fees with respect to his own entitlement.' [Citation omitted.]" Flynn, 312 Mont. at 413, 60 P.3d 397. Finally, the court based its decision on statutory preemption, holding that "`[w]here a conflict arises between the common law and a statute, the common law must yield.' [Citation omitted.]" Flynn, 312 Mont. at 414, 60 P.3d 397.
On appeal from the rulings of the Workers Compensation Court, the Montana Supreme Court in its Flynn decision also discussed Stahl, where the claimant incurred attorney fees to recover social security disability benefits and the Social Security Administration withheld a percentage of the award for direct payment of his attorney fees. Following the Stahl claimant's social security disability award, the State Fund determined that it was entitled to reduce its future payment of benefits to account for the retroactive social security disability award. The claimant contended that since he had not received the amount withheld for attorney fees, it should not be included in the overpayment calculation.
The Flynn court noted that the Stahl claimant did not argue for application of the common fund doctrine and presented a different theory for relief than was presented in *31 Flynn. The Flynn court, therefore, did not find Stahl to be dispositive. Next, the court summarized the elements of the common fund doctrine as follows:
"(1) an active beneficiary must create, reserve, or increase a common fund; (2) the active beneficiary must incur legal fees in establishing the common fund; and (3) the common fund must benefit ascertainable, non-participating beneficiaries. We enforce this doctrine because equity demands that all parties receiving a benefit from the common fund share in the cost of its creation. [Citation omitted.]" Flynn, 312 Mont. at 414, 60 P.3d 397.
With those elements in mind, the Flynn court observed that by obtaining a social security disability award the claimant enabled the State Fund to reduce his weekly workers compensation benefits. Also, as a result of the claimant's litigation efforts, funds were recovered which accrued to the substantial benefit of the State Fund. While the State Fund reaped the benefit of the claimant's efforts, it was not required to intervene, risk expense, or hire an attorney throughout the litigation proceedings. As a result, the Flynn court held that the claimant's social security disability award constituted an existing, identifiable monetary fund or benefit in which an ascertainable, nonparticipating beneficiary maintained an interest. Flynn, 312 Mont. at 415, 60 P.3d 397.
The state's high court acknowledged that the common law is preempted where the law is statutorily declared. But it stated that "the Workers' Compensation Act is silent on the issue of attorney fee apportionment following benefit recoupment." Flynn, 312 Mont. at 415, 60 P.3d 397. Thus, the Flynn court found there was no statutory declaration preempting the equitable principles of the common fund doctrine.
A dissent, however, took the view that the common fund doctrine had no application. First, the dissenting justice observed that there is no "common fund" because the governmental agency involved in that case was not a party to the administrative proceeding, made no claim, and did not share a claim with Flynn, the claimant. Indeed, "Flynn's SSD award is personal to him and all funds obtained thereunder are entirely under his control. The State Fund has no claim of entitlement to, or power to control the disbursement of, any funds paid to Flynn by the Social Security Administration." Flynn, 312 Mont. at 417-18, 60 P.3d 397. (Rice, J., concurring part and dissenting in part). In addition, the dissenting justice concluded there was not a common interest because the "[f]und is not a beneficiary with a common claim to federal benefits." Flynn, 312 Mont. at 418, 60 P.3d 397 (Rice, J., concurring in part and dissenting in part).
In support of the position, the dissent cited Neal v. County of Stanislaus, 141 Cal.App.3d 534, 190 Cal.Rptr. 324 (1983). In Neal, the court discussed the development of the common fund doctrine and noted the existence of contractual obligations which furthered the doctrine. Neal 141 Cal.App.3d at 538, 190 Cal.Rptr. 324. In so doing, the court stated:
"The mere fact that defendant [county] benefits from plaintiff's efforts does not in itself entitle plaintiff to fees from defendant. In County of Tulare v. City of Dinuba, [205 Cal. 111, 270 P. 201 (1928)], the Supreme Court stated:
'The underlying principle in all the cases where one has been allowed compensation out of a common fund belonging to others for expenses incurred and services rendered on behalf of the common interest is the principle of representation or agency. ... The fact that one may be benefitted by an action brought by another is not of itself sufficient to justify a court in assessing costs against the one who also profits by said action. Some contractual relation or some equitable reason sufficient to support an allowance of costs must be shown to exist to justify a court of equity in making such assessment.'
"Here, there is no contractual relation or overriding equitable rationale of unfairness to plaintiff which supports an allowance of fees." Neal, 141 Cal.App.3d at 539, 190 Cal.Rptr. 324.
Adopting this reasoning, the dissenting justice in the Montana case further noted that the common fund doctrine is "`rooted in *32 the equitable concept of quasi-contract.' [Citations omitted.] It is applied in cases involving `principle[s] of representation or agency.' [Citation omitted.]" Flynn, 312 Mont. at 419, 60 P.3d 397. It does not, however, apply simply because one benefits from the efforts of another.
The dissent in Flynn is consistent with the second line of cases applying the common fund doctrine in situations similar to the one before us. In one such case, the Nebraska Supreme Court adopted similar reasoning to the dissent in Flynn when it refused to apply the common fund doctrine and included attorney fees in the amount of a benefit reduction. In Kindred v. City of Omaha Emp. Ret. Sys., 252 Neb. 658, 564 N.W.2d 592 (1997), the claimant sought reimbursement from the City's retirement system under the common fund doctrine for attorney fees that he incurred in a workers compensation action after the retirement system offset those benefits from his disability retirement pension. Omaha Municipal Code Section 22-35 stated, in relevant part:
"`Any member of the system who has at least five (5) years of service credit and has sustained and/or shall sustain injuries or sickness, which immediately or after a lapse of time permanently unfit such member for active duty, shall receive a monthly disability pension as long as he or she remains unfit for active duty or until he or she reaches age sixty-five (65), whichever event occurs first. Such monthly disability pension in combination with workers' compensation and social security shall not exceed sixty (60) percent of such member's base compensation for the last full month prior to disability.'" Kindred, 252 Neb. at 659-60, 564 N.W.2d 592.
The parties agreed that the language of the city ordinance allowed the Retirement System to deduct the full amount of the claimant's workers compensation award from the retirement pension. The claimant's attorney appeared before the Retirement System's board of trustees and requested that one-third of the amount of workers compensation benefits that were deducted from the claimant's disability retirement pension be returned to him as reimbursement for attorney fees incurred in the workers compensation case. The board of trustees agreed to reimburse the claimant for attorney fees and costs with respect to some of his permanent partial disability benefits in the total amount of $5,991 but denied his claim for reimbursement of other attorney fees.
Unsatisfied, the claimant brought an appeal to the district court, contending that the Retirement System had benefited by reducing his service-connected disability pension entitlement by the full amount of the workers compensation benefits. The Retirement System, therefore, should be required under the common fund doctrine to reimburse the claimant for the full amount of attorney fees which he paid with respect to those benefits. The district court ruled in favor of the Retirement System, concluding the attorney's efforts had not created a common fund but instead had merely resulted in workers compensation benefits that reduced the claimant's disability retirement pension. The district court found the claimant was receiving all of the workers compensation and disability retirement benefits to which he was entitled and that it would be unfair to require the Retirement System to pay the fee which the claimant contracted to pay his attorney in the workers compensation case, especially since there was no language in the city ordinance creating such an obligation.
On appeal, the Nebraska Supreme Court observed that prior precedent held that "the common fund doctrine `presupposes the existence of a fund.'" Kindred, 252 Neb. at 663, 564 N.W.2d 592. In the situation before it, the court concluded here was no "common fund" upon which application of the common fund doctrine could be predicated. The claimant received his workers compensation benefits and paid his attorney in full pursuant to their contract. The Kindred court noted that the Retirement System did not claim or receive a disbursement of money from any source, and there was no fund within the jurisdiction of the district court from which it could have ordered disbursements. Kindred, 252 Neb. at 664, 564 N.W.2d 592.
Instead, the Retirement System simply calculated the claimant's disability retirement *33 pension benefits in the manner prescribed by the city ordinance, deducting the full amount of workers compensation benefits from his monthly disability retirement entitlement. "It is undisputed that this is exactly what the ordinance required," stated the Kindred court. Kindred, 252 Neb. at 664, 564 N.W.2d 592. Further, the city ordinance defining disability retirement pension benefits contained no permissive language similar to a Nebraska statute, which provided that attorney fees incurred in obtaining a recovery from a third party could be prorated between an injured employee and the subrogated employer or workers compensation insurer. Kindred, 252 Neb. at 664, 564 N.W.2d 592 (citing previous version of Neb. Rev. St. § 48-118). Observing that the city ordinance did not provide for excluding the attorney fees from the workers compensation reduction, the Kindred court determined that the district court correctly found that the common fund doctrine afforded no basis for judicial imposition of such a requirement. Kindred, 252 Neb. at 664, 564 N.W.2d 592; see Dear v. Union Cent. Life Ins. Co., 573 F.Supp.2d 958, 963 (W.D.Tex.2008) (holding that under Texas law as predicted by federal court, common fund doctrine did not apply to limit group accident insurer's contractual subrogation right to recover its payments from proceeds of employee's settlement with third-party tortfeasor by amount of its fair share of attorney fees and expenses incurred in securing recovery); Kramer v. State Retirement Bd., 195 P.3d 925, 931-32 (Utah App.2008) (holding that common fund doctrine did not apply to invalidate subrogation provision of public employee health insurance policy).
As we consider these two divergent lines of cases, we find the view represented by the Nebraska Supreme Court's decision and the dissent in Flynn to be more persuasive. While the equitable approach adopted in the cases using the common fund doctrine is somewhat alluring, its application under these circumstances is contrary to the rule. The Retirement Board had no interest in Robinson's workers compensation award and did not have an agency or contractual relationship with her. There was no "common fund" or "common interest" in the workers compensation award. Further, although Wichita's retirement fund did not have to pay out as much as it would have had Robinson not received workers compensation benefits, the purpose of the common fund doctrine is not to require the sharing of attorney fees with everyone who derives a financial benefit from a claimant's settlement or award. Further, as we have discussed, Wichita Code Section 2.28.150(d)(3) is clear and unambiguous and does not create an exception for attorney fees. Hence, the Retirement Board appropriately applied the provision by reducing the retirement disability benefit by the entire workers compensation award, including the attorney fees.
The district court's decision directing the Retirement Board to reduce the workers compensation deduction by the amount of attorney fees and costs incurred in Robinson's workers compensation case is reversed. The Retirement Board's calculation of retirement disability benefits in which it utilized the full amount ($125,000) of workers compensation benefits received by Robinson is affirmed.
LUCKERT, J., dissenting:
I respectfully dissent from the majority's conclusion that the common fund doctrine does not apply in this case. The majority adopts the view of the Nebraska Supreme Court in Kindred v. City of Omaha Emp. Ret. Sys., 252 Neb. 658, 564 N.W.2d 592 (1997), and the dissent in Flynn v. State Compensation Ins. Fund, 312 Mont. 410, 60 P.3d 397 (2002), both of which adhere to the early roots of the common fund doctrine and reject a less rigid equitable view that is more consistent with this court's application of the doctrine. I would adopt the holdings and rationale of the courts in Leonard v. Southwestern Bell Corp. Disability, 341 F.3d 696 (8th Cir.2003); Young v. Mory, 294 Ill. App.3d 839, 228 Ill.Dec. 965, 690 N.E.2d 1040 (1998), and the majority in Flynn, 312 Mont. 410, 60 P.3d 397, which better express views consistent with this court's past applications of the common fund doctrine.
In defining and applying the common fund doctrine, this court has looked to decisions of *34 the United States Supreme Court. See, e.g., Gigot v. Cities Service Oil Co., 241 Kan. 304, 313-14, 737 P.2d 18 (1987). A review of those decisions reveals that the driving principle is one of equity, and formalistic rules based on the early common-law roots of the common fund doctrine, such as applied by the Nebraska Supreme Court and the dissenting justice in Flynn, have been modified to allow equitable outcomes.
For example, the limited view of what comprises a "common fund" that was adopted by the Nebraska Supreme Court has been rejected by the United States Supreme Court. The Nebraska court in Kindred, 252 Neb. 658, 564 N.W.2d 592, required the attorney's efforts impact a common fund that is subject to the jurisdiction of the court; the Nebraska Supreme Court reasoned that the attorney's efforts resulted in the workers compensation award and that award was not within the jurisdiction of the court. Yet, in Mills v. Electric Auto-Lite, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)which is cited in Gigot, 241 Kan. at 313, 737 P.2d 18  the United States Supreme Court concluded that a "fund" need not even be created.
In Mills, the United States Supreme Court focused on whether the action that resulted in attorney fees benefited others who had not paid the attorney fees and discounted the importance of the attorney's efforts having resulted in a "fund." The Court noted that its past cases
"have departed further from the traditional metes and bounds of the [common fund] doctrine, to permit reimbursement in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them."
Mills, 396 U.S. at 393-94, 90 S.Ct. 616. As such, the Court concluded the failure to create a fund that was the subject of the lawsuit did not prevent application of the doctrine. The Court stated:
"The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale. Although the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a `common fund' for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses. ... This Court in Sprague [v. Ticonic Nat. Bank, 307 U.S. 161, 166, 59 S.Ct. 777, 83 L.Ed. 1184 (1939)], upheld the District Court's power to grant reimbursement for a plaintiff's litigation expenses even though she had sued only on her own behalf and not for a class, because her success would have a stare decisis effect entitling others to recover out of specific assets of the same defendant. Although those others were not parties before the court, they could be forced to contribute to the costs of the suit by an order reimbursing the plaintiff from the defendant's assets out of which their recoveries later would have to come. The Court observed that `the absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather than through a decree hardly touch[es] the power of equity in doing justice as between a party and the beneficiaries of his litigation.' [Sprague, 307 U.S.] at 167 [59 S.Ct. 777]." Mills, 396 U.S. at 392-93, 90 S.Ct. 616.
The Court emphasized that equity was the principle concern, stating that "[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." Mills, 396 U.S. at 392, 90 S.Ct. 616.
While the facts and circumstances of Mills are clearly distinguishable from this case, I view the decision as indicating the common fund doctrine need not be adhered to with the rigid view that constrained the Nebraska Supreme Court. Reflecting this shift, some courts have suggested that using the term the "common benefit" doctrine better describes a Mills-type application. See, e.g., Petow v. Warehime, 996 A.2d 1083 (Pa.Super.2010). Regardless of how the doctrine is labeled, the focus is on whether the efforts *35 provide a common benefit in a fund in which both parties have an interest, such as the retirement pension fund. The Mills-type view is better reflected in the analysis in Leonard, 341 F.3d 696; Young, 294 Ill. App.3d 839, 228 Ill.Dec. 965, 690 N.E.2d 1040; and the majority opinion in Flynn, 312 Mont. 410, 60 P.3d 397.
A second rationale of the Nebraska Supreme Court and the dissent in Flynn that was adopted by the majority in this case is that the clear language of the provision controls and does not create an exception for attorney fees. This rationale ignores K.S.A. 77-109, which states in part: "The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state." In other words, when the legislature intends to abolish a common-law rule, it must do so in an explicit manner. "In the absence of such an expression of legislative intent, the common law remains part of our law." American General Financial Services, Inc. v. Carter, 39 Kan.App.2d 683, 687, 184 P.3d 273 (2008); see In re Estate of Mettee, 10 Kan.App.2d 184, 187, 694 P.2d 1325, aff'd 237 Kan. 652, 702 P.2d 1381 (1985).
In my view, an explicit abolition of the common fund doctrine can be found in a provision cited by the majority, K.S.A.2009 Supp. 74-4927(1)(B). As noted by the majority, K.S.A.2009 Supp. 74-4927(1)(B) specifically states: "As used in this section, 'workers compensation benefits' means the total award of disability benefits payments under the workers compensation act notwithstanding any payment of attorney fees from such benefits as provided in the workers compensation act." (Emphasis added.) This clear language, I would conclude, is sufficient to abrogate the application of the common fund doctrine. On the other hand, Wichita Code Section 2.28.150(d)(3) lacks this clarity and does not displace the doctrine.
Hence, the common fund doctrine can apply, and it is appropriate to do so in this case because Robinson's efforts saved the Retirement Board the $93,750 it would have owed to Robinson if she had not received her workers compensation award. This $93,750 is now available to the Retirement Board, which has benefited from the efforts of Robinson's attorney. Consequently, I would affirm the district court.
JOHNSON, J., joins in the foregoing dissent.