FILED
United States Court of Appeals
Tenth Circuit

December 10, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MATTHEW SKOGEN,

       Plaintiff-Appellant,

v.

CITY OF OVERLAND PARK,
KANSAS,

       Defendant-Appellee.

No. 10-3088
(D.C. No. 2:08-CV-02657-DJW)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **ANDERSON**, and **KELLY**, Circuit Judges.

Plaintiff Matthew Skogen was employed as a police officer with the City of

Overland Park for nineteen years. He was terminated by the Chief of Police as a

result of his conduct during an incident that occurred while he was off duty.

Skogen appealed his termination to the Civil Service Commission, which upheld

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

his termination following an evidentiary hearing. Skogen filed suit pursuant to 42 U.S.C. § 1983 claiming that he did not receive adequate post-termination due process because the rules governing the Commission's review of his termination did not permit it to conduct a full de novo review. The district court entered judgment for the City on cross motions for summary judgment, and Skogen now appeals.

We review the grant or denial of summary judgment de novo, applying the same standard as the district court under Fed. R. Civ. P. 56. *See Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007). Under that standard, summary judgment is proper if there is no genuine dispute as to any material fact and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[1] When applying this standard, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1243 (10th Cir. 2010) (internal quotation marks omitted). The standard does not alter when the parties file cross motions for summary judgment. Each motion is treated separately and "the denial of one does not require the grant of another." *Christian Heritage Acad.*, 483 F.3d at 1030 (internal quotation

---

[1]

By amendment effective December 1, 2010, the summary judgment standard previously enumerated in subsection (c) was moved to subsection (a), without significant change. *See* Fed. R. Civ. P. 56 advisory committee note (2010 Amendments).

marks omitted). But "[w]here the facts are not in dispute and the parties only disagree about whether the actions were constitutional, summary disposition is appropriate." *Id.*

The district court determined, and the City does not dispute on appeal, that Skogen could be terminated only for cause and he therefore had a property interest in his continued employment with the police department. The only issue on appeal is whether Skogen received all the process he was due.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). "Due process . . . is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Skogen complains that although he received adequate pre-termination process,[2] he was deprived of post-termination due process in his appeal to the Civil Service Commission. In particular, he challenges one of the rules that governed the Commission's review of the Chief's decision to terminate him, which provided that the Commission could sustain or alter, though not increase, the disciplinary action, but it could not reverse or reduce the disciplinary action

---

[2] Before he can be terminated, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employers' evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985). Skogen received substantial pre-termination process.

The police Department's Internal Affairs detectives conducted an extensive factual investigation during which it interviewed numerous witnesses, both civilian and police, who were involved in the incident even tangentially, and they interviewed Skogen twice. After preparing their investigative report, the detectives met with the City's attorney, Skogen's immediate supervisor, his Division Commander, and deputy chief Lt. Col. Cauley to review and discuss the report. Based on their review, the supervisors determined that Skogen should be terminated. They submitted their recommendation to the Chief, who then met with Cauley and the other two deputy chiefs. After discussing the matter with them, the Chief gave Cauley permission to proceed. Cauley then sent a four-page letter to Skogen informing him that the Division Commander had recommended his termination, enumerating the police department Standards of Conduct Skogen had violated, explaining how he had violated each one, and informing him that a meeting with the Chief had been scheduled at which he could present all his oral and written explanations or defenses. During his meeting with the Chief, Skogen told the Chief his side of the story and also gave the Chief a letter expressing his remorse and relating his mitigating evidence. Following the meeting, the Chief met again with the Internal Affairs detectives and reviewed the evidence again. He decided to uphold the termination decision and wrote Skogen a letter to that effect. Following his termination, Skogen appealed the Chief's decision to the Civil Service Commission.

-4-

unless it found that "the action or decision was arbitrary or capricious or undertaken without reasonable cause." Aplt. App. at 63.

The district court carefully weighed each of the *Mathews* factors to determine whether Skogen was deprived of due process. It concluded that the first factor weighed in favor of Skogen because he had a substantial interest in retaining his employment, a conclusion that neither party disputes. The court concluded that the second factor weighed in favor of the City. First, the Commission conducted a full evidentiary hearing and found, on a de novo factual review, that Skogen violated police department Standards of Conduct, which the Commission concluded were sufficient to uphold the Chief's decision. Second, "the magnitude of the pre-termination process [Skogen] received minimized any risk of the Civil Service Commission erroneously depriving [Skogen] of his employment through its use of the deferential standard." *Id.* at 105.

Although Skogen argues on appeal that he was not complaining about the pre-termination process he received and that it is irrelevant to his post-termination due process claim, the district court properly considered both the pre-termination and post-termination process Skogen received in determining whether he was given all the process he was due. "[W]e must evaluate the constitutionality of post-termination process in light of the pre-termination procedures it follows." *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996).

When the pre-termination process offers little or no opportunity for the employee to present his side of the case, the procedures in the post-termination hearing become much more important. Such a post-termination hearing represents the only meaningful opportunity the employee has to challenge the employer's action, and requiring a dismissed employee to prove in this context that he was terminated without just cause may increase the risk of an erroneous deprivation. It is often difficult to prove a negative, and where the pre-termination process has been minimal, the employee's fate may depend entirely upon the post-termination hearing. . . . In contrast, when the employee has had a meaningful opportunity to explain his position and challenge his dismissal in pre-termination proceedings, the importance of the procedures in the post-termination hearing is not as great. In this type of post-termination hearing, simply giving the employee "some opportunity" to present his side of the case "will provide a meaningful hedge against erroneous action."

*Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 543 n.8 (1985)).

The district court noted that "[h]ad the Police Department's pre-termination procedures been cursory, [Skogen] would have a stronger argument that the Commission's deferential standard of review increased the risk of . . . an improper determination," but Skogen had received "extensive" pre-termination procedures, which minimized the risk that he was deprived of his employment erroneously. Aplt. App. at 105-06. Finally, the district court concluded that it was unlikely that a less deferential standard of review would have resulted in a different ruling by the Commission, so the probable value of using a different standard of review was minimal.

Turning to the third *Mathews* factor, the district court determined that the City had "a significant interest in preserving the integrity of its police department

-6-

and maintaining public trust in its police department," which would be furthered by "insuring that its police officers comply with the Police Department's Code of Ethics." *Id.* at 106. "This governmental interest is as significant, if not more significant, than [Skogen's] interest in his continued employment," *id.*, and weighed in the City's favor. On the other hand, the court concluded that the additional burden to the City of altering the Commission's standard of review "would be minimal, in terms of both time and money," *id.*, which weighed in Skogen's favor.

After balancing all the *Mathews* factors together, the district court concluded that the scale ultimately tipped in the City's favor, largely due to two facts. First, Skogen was given extensive pre-termination process; and second, "the Civil Service Commission made its own, independent factual findings which were consistent with the police Department's determination that [Skogen] had engaged in misconduct that violated important Police Department Standards of Conduct." *Id.* at 107. The court concluded that "the Commission acted not as a mere 'rubber stamp' of the Police Department's actions but as a fair and impartial tribunal," and it was "highly unlikely" that the challenged standard of review "resulted in an erroneous decision." *Id.*

Both parties take issue with some aspect of the district court's application of the *Mathews* balancing test. Skogen contends that the district court erred in concluding that the Commission's standard of review created little risk of an

erroneous deprivation and that the probable value of using a different standard of review was minimal. The City contends that the district court erred in concluding that altering the standard of review would impose only a minimal burden on the City.[3]

Based on our de novo review of the parties' briefs, the record on appeal, and the applicable law, we conclude that the district court struck the balance correctly. The City provided Skogen all the process he was due when it terminated his employment.

The judgment of the district court is affirmed.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[3] The City did not file a cross-appeal; it argues error as to this aspect of the court's decision only as additional support for its position that the district court was correct in concluding that the ultimate balance of the factors weighed in the City's favor.