Atcheson, J.,
dissenting: To prop up the termination of Robert K. Miller as Wabaunsee County Appraiser, the majority dilutes the statutory authority of the Kansas Department of Revenue to review those decisions made by county commissions and, even more dangerously, sends the due process rights of public employees hurtling back toward the 19th century. Each of those pillars essential to affirming Miller’s firing amounts to a material misapplication of the law. I, therefore, respectfully dissent.
*664 The department’s review should have been made without any deference to the county commissioners’ decision to fire Miller. The language of K.S.A. 19-431(a) requires nothing less. And I would find the county commissioners afforded Miller constitutionally inadequate due process before firing him—they really gave him none at all. As I explain, the combined effect of those deficiencies requires that Miller’s discharge in March 2011 be treated as a suspension with pay through the balance of his term as appraiser. See Kennedy v. Board of Shawnee County Comm'rs, 264 Kan. 776, 799-800, 958 P.2d 637 (1998). Because that term ended in June 2013, the county owed Miller compensation until then, and the legal dispute should now be viewed as moot in all other respects.
The majority doesn’t see it that way and undercuts Miller’s due process challenge by approving a procedure that eliminates any meaningful predeprivation opportunity to be heard in combination with a postdeprivation hearing giving deference to the decision-maker’s adverse action. The resulting concoction amounts to a severe denigration of due process rights that, if allowed to stand, could become a blueprint for government entities to deny those constitutional protections in all sorts of contexts.
The controlling issues here are legal, and dre facts relevant to them are undisputed. So I don’t rehash Miller’s job performance as the Wabaunsee County Appraiser. Miller held the position for an extended time. But a lot of evidence suggests he did something short of a stellar job. Regardless of his competence, however, Miller was entitled to a review of the commissioners’ decision to fire him that conformed to the statutory protections in K.S.A. 19-431(a) and to the due process rights of the Fourteenth Amendment to the United States Constitution. He got neither. I outline each of those deprivations and discuss the proper outcome in this case.[1]

*665
Statutory Provisions

In each county, the board of county commissioners appoints an appraiser for a 4-year term to oversee property valuation and tax assessments. K.S.A. 2014 Supp. 19-430(a). A term of office for appraisers should be taken as legislatively crafted insulation against political vicissitudes and pressures that might otherwise sway their approach to their duties. See Kennedy, 264 Kan. at 790 (quoting district court’s observation that the legislature sought to protect appraisers from “ ‘the fluctuating whim of politics or personality’ ”). The commissioners, however, may approve an order removing an appraiser during the term upon “evidence satisfactory” to them demonstrating the appraiser’s “incompetency or for any other cause.” K.S.A. 2014 Supp. 19-431(a). The order is to set out the reasons for the commissioners’ actions. Upon service of the order, the appraiser is “divested of all power,” and the commissioners may name a temporary replacement. K.S.A. 2014 Supp. 19-431(a). The statute itself requires no advance notice to the appraiser and mandates no hearing of any kind before the commissioners.
But an appraiser dispossessed of his or her job may request a hearing in front of the department of revenue’s director of property valuation or an agency designee to challenge the county commissioners’ order. K.S.A. 2014 Supp. 19-431(a). Miller availed himself of that statutory protection.
In this case, an administrative law judge (ALJ), as the agency designee, heard testimony and received other evidence during a 3-day proceeding. Ultimately, the ALJ upheld the commissioners’ firing of Miller. In doing so, the ALJ interpreted K.S.A. 19-431(a) to preclude a de novo review of the grounds for termination and as “dictating] deference to the judgment and decision” of the commissioners. The ALJ cited no authority supporting that construction of K.S.A. 19-431(a) and no particular reason justifying it. The idea seems to have originated with the lawyers for Wabaunsee County, and they have never offered any law backing up their notion. The majority buys off on that interpretation of K.S.A. 19- *666 431(a) essentially as being so obvious as to defy debate—a rationale that’s nearly as mystifying as it is self-serving.
The statutory language, fairly read, requires the director or, in this case, the ALJ to make an independent review and come to an independent conclusion warranting the removal of an appraiser. The key language in K.S.A. 2014 Supp. 19-431(a) requires the director to “malee inquiry as to all facts connected with such . . . termination, and if after such inquiry ...[,] the director. . . shall determine that the appraiser. . . should be . . . terminated, then the director . . . shall render an order removing such appraiser.” (Emphasis added.)[2] The statute says the director is to determine if the appraiser should be fired. The decision is the director’s own, based on his or her inquiry into the facts. That sounds like the director reaching a fresh conclusion about an appraiser’s job performance unfettered by and without deference to the commissioners’ actions.
Had the legislature meant the director to defer, it easily could have said so. For example, the statute could have required the director to determine if the commissioners’ order removing an appraiser were supported by substantial evidence or if the commissioners’ decision had a reasonable basis in the evidence. The legislature could have said the director ought to uphold what county commissioners do unless their actions are clearly erroneous. Those sorts of provisions would signal (and require) deference. But K.S.A. 2014 Supp. 19-431(a) hasn’t language of that type. The legislature knows how to craft statutes requiring a hearing officer or some other reviewing authority to defer to the initial decision of another government actor. See, e.g., K.S.A. 2014 Supp. 44-510j(d)(2) (workers compensation board shall affirm director’s decision that *667 medical provider has overcharged for services unless decision “not supported by substantial competent evidence”); K.S.A. 2014 Supp. 60-253(e)(2) (court must accept master s findings of fact “unless clearly erroneous”); K.S.A. 2014 Supp. 76-llal4 (board decision to discharge teacher to be upheld if hearing officer finds “any substantial evidence” supporting decision for reasons distinct from teacher s claimed exercise of “a constitutionally protected right”); K.S.A. 2014 Supp. 77-621(c)(7) (court may grant relief to party challenging agency action based on factual findings only if findings “not supported ... by evidence that is substantial”). The omission of specific language from K.S.A. 2014 Supp. 19-431(a) requiring deference should be taken for what it logically indicates—legislative intent to afford appraisers a neutral forum to challenge anew their dismissals at the hands of local elected officials.
The majority’s interpretation inserts something—a limitation on the directors review—not plainly apparent from the statutory lan- • guage. The rules of construction are otherwise. Robinson v. City of Wichita Employees’ Retirement Ed. of Trustees, 291 Kan. 266, Syl. ¶ 6, 241 P.3d 15 (2010) (The court “will not speculate on legislative intent and will not read the [statutory] provision to add something not readily found in it.”); Casco v. Armour Swift-Eckrich, 283 Kan. 508, Syl. ¶ 6, 154 P.3d 494 (2007) (“A statute should not be read to add that which is not contained in the language of the statute or to read out what, as a matter of ordinary language, is included in the statute.”).
Other aspects of K.S.A. 2014' Supp. 19-431(a) cut against curtailing the director’s independent consideration of an appraiser’s job performance and discharge. The director’s factual inquiry is to be made in a hearing conducted under the Kansas Administrative Procedure Act, K.S.A. 77-501 et seq., after the commissioners have issued their order and have completed whatever investigation they considered appropriate. Nothing in K.S.A. 2014 Supp. 19-431(a) suggests the director should take notice of, let alone bow to, the evidence the commissioners compiled. And nothing in the Administrative Procedure Act requires a reviewing authority to give deference to factual findings of the initial decisionmaker or to actions taken based on those findings. After inquiring into the facts, the *668 director may issue an order terminating an appraiser. The director’s order then permanently divests the appraiser of his or her post. So even if the director concludes an appraiser should be discharged, he or she does not ratify or affirm the commissioners’ order but supersedes it with a new order. There isn’t much in the way of deference on that score.
The majority, nonetheless, infers the director should defer to the commissioners because they have acted on “evidence satisfactory” to them. But the inference rests on a phrase pulled from a broader provision in K.S.A. 2014 Supp. 19-431(a) and, as a result, misses the legislative objective. That part of K.S.A. 2014 Supp. 19-431(a) permits the commissioners to act when they find satisfactory evidence “the appraiser . . . has failed or neglected to properly perform the duties of office, by reason of incompetency or for any other cause.” The statutory language establishes county commissioners must have at least colorable evidence of good cause to move to discharge an appraiser. In other words, the provision makes clear appraisers do not serve at the pleasure of county commissioners, they are not at-will employees, and they cannot be removed on mere caprice. See Smith v. Kansas Orthopaedic Center, 49 Kan. App. 2d 812, 815, 316 P.3d 790 (2013) (“As a general rule, an at-will employee may be fired at any time for any reason.”). Rather, appraisers may be discharged only for cause during their 4-year appointments. The requirement that the commissioners act on evidence demonstrates no legislative intent that the director either rely specifically on that evidence, in contrast to the evidence developed through the review hearing, or that the commissioners’ decision to terminate be accorded deference.
I would find that the ALJ in this case erred in giving deference to the Wabaunsee County Commissioners’ decision to fire Miller. The ALJ should have made an independent determination whether the facts developed at the hearing demonstrated Miller to be incompetent or supported other good cause for his termination. Because the ALJ used the wrong legal standard, this court can and should reverse, consistent with the Kansas Judicial Review Act, K.S.A. 2014 Supp. 77-621(c)(4) (court may grant relief when “agency has erroneously interpreted or applied the law”). Were *669 this the only problem, the appropriate remedy would be a remand to the ALJ to reconsider the evidentiary record in light of the correct standard required in K.S.A. 2014 Supp. 19-431(a)—that is, for an independent or de novo review giving no deference to the commissioners’ decision.
The ALJ made no detailed credibility determinations and did not endeavor to resolve conflicting testimony presented at the hearing. Much of the evidence from the commissioners seemed to be hearsay. Although hearsay may be admitted in an administrative proceeding, secondhand accounts may inherently lack a measure of credibility. See K.S.A. 77-524(a) (Under Administrative Procedure Act, “[ejvidence need not be excluded solely because it is hearsay.”); In re Guardianship and Conservatorship of No. 108,297, 2013 WL 2395900, at *13 (Kan. App. 2013) (unpublished opinion) (“Hearsay is generally considered unreliable because the person making the statement—the declarant—does not appear in court .... [and] avoids the principal mechanisms for measuring the candor and reliability of a witness: [1] the taking of an oath to tell the truth; [2] the rigor of cross-examination to test the statements; and [3] the factfinder’s opportunity to gauge demeanor.”).
The ALJ looked at the entire hearing record and simply concluded the commissioners had evidence they found satisfactoiy to warrant Miller’s firing, thereby impermissibly giving deference to that decision and failing to make the statutorily required independent determination of Miller’s job performance. This court cannot assess the evidence under the correct standard because we are in no position to weigh credibility based on a transcript as a proxy for the ALJ who saw and heard the witnesses testify. See In re Guardianship and Conservatorship of 2013 WL 2395900, at *9 (judge seeing witnesses testify “is uniquely positioned” to make credibility determinations; appellate court “cannot replicate that perspective and, therefore, may not reweigh the record evidence”). In the absence of detailed credibility findings from the ALJ, we would also plainly exceed our authority under K.S.A. 77-621(c)(7) were we to weigh the evidence and determine whether there was good cause to terminate Miller.
*670 But, as I discuss, constitutional due process considerations create another problem and require a different remedy.

Due Process Rights

General Principles

Government entities may not extinguish legally recognized property rights without affording the persons holding those rights procedural due process—an efficacious forum in which to show the action to be legally or factually unwarranted. If public employees have property rights in their jobs, they are entitled to due process before being permanently deprived of those rights or, in a word, fired. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). Public employees haven’t always been afforded constitutional protections in the workplace. As United States Supreme Court Justice Oliver Wendell Holmes, Jr., famously remarked in upholding the firing of a police officer during his earlier tenure on the Massachusetts Supreme Judicial Court: “The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman.” McAuliffe v. City of New Bedford, 155 Mass. 216, 220, 29 N.E. 517 (1892). Although Justice Holmes wrote specifically of free-speech rights, his comment captured the lack of constitutional protections extended government employees. The law has advanced considerably since then. But not today.
Property rights triggering due process protections must derive from a source independent of tire Fourteenth Amendment. See Loudermill, 470 U.S. at 538. Here, a 4-year appointment for appraisers, as established in K.S.A. 2014 Supp. 19-430, that can be cut short only for cause, as provided in K.S.A. 2014 Supp. 19-431(a), creates a protected property right. See Carmody v. Board of Trustees of University of Illinois, 747 F.3d 470, 474 (7th Cir. 2014) (for-cause termination requirement creates protected property interest in government job). Nobody contends otherwise. The question then becomes what constitutional process is due Miller or any other public employee with a protected property right in his or her job.
*671 As outlined by the United States Supreme Court, constitutionally sufficient procedural due process requires that a person be afforded a right to be heard in a meaningful way before being deprived of “life, liberty, or property.” U.S. Const, amend. XIV, § 1; Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (“The fundamental requirement of due process is the opportunity to be heard ‘at a meaningful time and in a meaningful manner.’ [Citation omitted.]”); Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause “at a minimum” requires that “deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.”). The Kansas Supreme Court similarly defines due process rights. See State v. King, 288 Kan. 333, 354, 204 P.3d 585 (2009).
The nature and extent of the due process protections must be calibrated to the significance of the property interest. Mathews, 424 U.S. at 349. The more important the interest at stake, the more elaborate the protections. See Goldberg v. Kelly, 397 U.S. 254, 262-63, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). The loss of a job has been recognized as the deprivation of an important interest triggering considerable due process for the government employee. Loudermill, 470 U.S. at 543. Termination is frequently referred to as the industrial equivalent of “capital punishment,” meaning it is the harshest sanction an employer can impose on an employee. See Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 420-21, 101 S. Ct. 1836, 68 L. Ed. 2d 248 (1981) (Powell, J., concurring in part and concurring in judgment); Hartford Municipal Employees Ass’n v. City of Hartford, 128 Conn. App. 646, 662 n.3, 19 A.3d 193 (2011) (Flynn, J., dissenting); Oehmke, 2 Commercial Arbitration (3d ed. 2015) § 29:11 (many labor arbitrators “analogiz[e] employment termination to ‘capital punishment in the work place’ ”). The financial impact can be overwhelming, and a for-cause termination may considerably lessen the chances for comparable reemployment.
Generally, a person must be afforded some measure of procedural due process before suffering the loss of a property right. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 13, 16, 98 *672 S. Ct. 1554, 56 L. Ed. 2d 30 (1978). That is true for a government employee facing termination. See Loudermill, 470 U.S. at 545-46; Jones v. City of Boston, 752 F.3d 38, 57 (1st Cir. 2014) (government employer ordinarily cannot satisfy due process solely through procedures available after termination). The pretermination due process need not be extensive if the employee is afforded a full-blown posttermination hearing. See Loudermill, 470 U.S. at 547-48 (noting limited pretermination due process constitutionally adequate in light of more elaborate statutory posttermination hearing procedures); Calhoun v. Gaines, 982 F.2d 1470, 1477 (10th Cir. 1992) (“Loudermill established that some form of pretermination hearing, plus a full-blown adversarial post-termination hearing . . . are required.”). The point is to avoid a wrongful deprivation. The courts will review the overall process—the combination of preter-mination and posttermination protections—for constitutional sufficiency, so long as there are minimal safeguards in place to head off the deprivation before it happens.
Government employees with protected property interests in their jobs must be afforded pretermination due process consisting of at least “oral or written notice of the charges against [them], an explanation of the employer’s evidence, and an opportunity to present [their] side of the story.” Loudermill, 470 U.S. at 546; Carmody, 747 F.3d at 475 (pretermination due process outlined in Loudermill constitutionally adequate when employee receives “full” posttermination hearing). The opportunity, thus defined, becomes both a meaningful one and a constitutionally sufficient one. Mathews, 424 U.S. at 349 (Persons facing the loss of protected property rights must be “given a meaningful opportunity to present their case.”); Carmody, 747 F.3d at 475 (“a meaningful opportunity to be heard before the employer decides on termination is a critical protection” even if the employee receives “robust” posttermination procedure).

Miller Denied Due Process

Measured against those settled constitutional principles, Miller received nothing resembling adequate pretermination due process from the commissioners. The majority cobbles together both the *673 meeting on March 14, 2011, when the commissioners presented Miller with the written statement of termination, and the executive session with the commissioners a week later to suggest the requirements of Loudermill and the Due Process Clause had been satisfied. The exercise comes up short.
The commissioners’ statement, set forth in full in the majority decision, contains three sentences outlining in exceptionally vague terms purported deficiencies in Miller’s performance as appraiser. The statement refers to lack of training of employees without identifying particular individuals or circumstances. Similarly, the statement mentions tasks left incomplete or completed in the nick of time without giving any specifics as to what happened or when. The statement suggests Miller reacted punitively to “employees ..
. speaking opt.” But, again, it identifies no employee, the issue on which he or she spoke, or Miller’s purported reaction. The fourth sentence mentions abstractly “issues about” leave time, clocking out for lunch, and use of a cell phone without particulars as to who was involved or when. Miller, however, likely would have understood the leave time and lunch issues, at least, to have been about his own' conduct—they had been matters of contention between him and the commissioners.
The written statement fails to provide fair notice of the “charges” against Miller, as contemplated in Loudermill, since the description of the asserted deficiencies contains no specifics about what happened on a given occasion. Anything like “who, what, where, or when” details about the grounds supposedly establishing cause for Miller’s termination cannot be found in the statement. Even if the generic characterization of those grounds were enough to give Miller notice, the statement then contains nothing outlining the commissioners’ “evidence,” the second requirement in Loudermill for minimally acceptable pretermination due process. The lack of detail in the statement precluded Miller from responding in any meaningful way to the allegations, particularly immediately after being given the letter as the commissioners demanded.
The circumstances demonstrate the commissioners really sought no response—meaningful or otherwise—to the allegations themselves. The balance of their statement couldn’t be clearer. The *674 commissioners informed Miller of their “consensus” that he and Wabaunsee County must “part ways.” They didn’t want to debate or even discuss that conclusion. The only remaining question for them was whether Miller would resign or be fired. In the statement, tire commissioners offered him “the option to resign.” And they went on to tell him they would be “open to negotiating a . . . separation agreement including a reasonable severance pay package.” Finally, the commissioners informed Miller that they would “expect” his decision at their meeting the following Monday.
So upon receiving the written statement, Miller had no meaningful opportunity to present his side of the allegations to the commissioners in an effort to avert the loss of his job. The commissioners neither furnished Miller particulars about the incidents purporting to show the statutorily required cause fon dismissal nor gave him time to address what he had been provided. That cannot be a meaningful opportunity to head off a mistaken or wrongful deprivation consistent with the Due Process Clause. Employees, at the very least, must be afforded enough information and detail about the claimed factual bases for their terminations to respond intelligibly. And they ought to be given enough time to gather their thoughts, if not some evidence, in making that response. What the commissioners delivered to Miller was an ultimatum that he could resign or be fired, not a constitutionally sufficieiit opportunity to set straight an erroneous deprivation.
Miller’s meeting with the commissioners tire next Monday didn’t repair that due process Violation. That was no rtiore a meaningful opportunity to avert termination, than was the cominissioners’ presentation of the written statement. The stated purpbse of the second meeting was to receive Miller’s decision on whether he would resign or be fired aiid (if he chose to quit) to negotiate a severance agreement. The commissioners did not intend the session to be a discussion of the validity of the grounds for Miller’s departure. They clearly communicated that purpose to Miller, so he had no reason to regard tire meeting as anything else.
The majority, nonetheless, treats those meetings singularly and collectively as a constitutionally sufficient pretermination opportunity for Miller to be heard as to why he ought to continue as *675 county appraiser. But that would be true if constitutional due process required only that the person deprived of a protected property interest interact with the decisionmaker for some reason, thereby creating a chance for the person to bring up the loss however off-topic or tangential it might be under the circumstances. In other words, the majority equates a serendipitous chance with a constitutionally “meaningful opportunity” to dissuade the decisionmaker in a forum intended for that very purpose. The two are far different, and the majority’s take on due process would drain the requirement for a predeprivation hearing of any practical significance. A government employer could get by with handing an employee a general statement of the reasons for his or her termination and scheduling a meeting for the next day with the deci-sionmaker or a proxy to collect the individual’s identification card and keys, to provide information on how to continue health insurance under COBRA, 29 U.S.C. § 1161, et seq., and to present a “final notice” of discharge. But that exit meeting couldn’t be the meaningful opportunity to prevent a wrongful termination envisioned in Loudermill or the Due Process Clause.
I would find that Miller did not receive constitutionally adequate pretermination due process.
In Kennedy, 264 Kan. at 798-99, the Kansas Supreme Court recognized K.S.A. 19-431(a) to be constitutionally deficient insofar as it fails to include a mechanism for pretermination due process. To uphold the statute, tire Kennedy decision endorsed the district court’s approach in treating the commissioners’ termination of an appraiser absent pretermination due process as a suspension with pay until the director of property valuation conducts a hearing and issues an order. Applying that rule here, I would find Miller to have been on paid suspension until such time as the ALJ issued an order of termination following a legally adequate hearing. As I have said, Miller never got pretermination due process. And he has yet to get a sufficient hearing in front of the ALJ. Accordingly, Miller was on paid suspension for the remainder of his 4-year term, and Wabaunsee County owes him compensation from March 2011 through May 2013.
*676 Whether the insufficiency of Miller’s hearing in front of the ALJ reflects a statutory violation or a constitutional violation presents a question of academic interest in this case. The hearing failed in hoth respects. A statutory violation alone presumably would not trigger a constitutional deficiency if the hearing nonetheless provided due process. See Taylor v. Kansas Dept. of Health & Environment, 49 Kan. App. 2d 233, 242, 305 P.3d 729 (2013) (“courts have long recognized that not every breach or violation of state law by a government agent gives rise to a constitutional wrong”), rev. denied 299 Kan. 1274 (2014).
As I have already discussed, the ALJ misconstrued K.S.A. 19-431(a) by deferring to the commissioners’ decision rather than making an independent determination of Miller’s job performance. Based on the rule in Kennedy, that error coupled with the lack of pretermination procedural due process arguably required that Miller remain on paid suspension because he never received a statutorily compliant posttermination hearing. The Kennedy decision isn’t entirely clear on that point. But under Kennedy, an appraiser must be treated as being on paid suspension if he or she has been denied both adequate pretermination due process and adequate overall due process. That’s where Miller ended up.
Even if K.S.A. 19-431(a) called for the sort of deference the ALJ extended the commissioners here, the whole procedure for discharging Miller failed to give him constitutionally required due process. The inadequate pretermination due process afforded Miller coupled with a posttermination hearing aimed at determining whether the commissioners’ decision simply had some support in the evidence does not satisfy the Due Process Clause. Minimal predeprivation due process—of the sort outlined in Loudermill— necessarily calls for a postdeprivation hearing independently examining the decisionmaker’s justification for acting. Cf. Mathews, 424 U.S. at 339 & n.21 (recipient of social security disability afforded due process when a de novo administrative review of decision to terminate benefits was followed by posttermination judicial review for substantial competent evidence); Benavidez v. City of Albuquerque, 101 F.3d 620, 626 (10th Cir. 1996) (“[Wjhere the pre-termination process has been minimal, tire employee’s fate *677 may depend entirely upon the post-termination hearing.”)- Conversely, a postdeprivation hearing deferring to the decisionmaker’s action at least arguably could be constitutionally acceptable if the person facing the loss had been given an elaborate predeprivation process permitting a detailed examination of the evidence and a studied opportunity to address directly the decisionmaker and to offer rebuttal evidence. See Skogen v. City of Overland Park, Kansas, 404 Fed. Appx. 327, 329-31 & n.2 (10th Cir. 2010). After all, if the predeprivation procedures themselves fully satisfy the Due Process Clause, the government entity need not provide any post-deprivation protections. See Calhoun, 982 F.2d at 1476-77; Vukadinovich v. Board of School Trustees of Michigan City Area Schools, 978 F.2d 403, 410-11 (7th Cir. 1992) (public school teacher not entitled to posttermination proceedings to satisfy Due Process Clause when he received notice of pretermination hearing 2 months in advance and was permitted to call witnesses and present other evidence, cross-examine school district’s witnesses, and address decisionmaker directly at the hearing).
But in this case, Miller got nothing approaching constitutional due process from the commissioners before being dismissed, so the ALJ’s deference to that decision failed to provide sufficient due process after the dismissal. The two in combination fared no better constitutionally—Miller was deprived of due process throughout the proceedings. Consistent with Kennedy, Miller’s termination, therefore, must be treated as a paid suspension for the balance of his term of office. I would so hold.

Given my assessment of K.S.A. 19-431(a) and Miller’s due process rights, the majority’s treatment of other issues is irrelevant. I, therefore, do not address the argument over the Wabaunsee County personnel policies or the treatment of them in the administrative review process or the district court. Relevant are the commissioners’ actions in dismissing Miller and the second administrative review of those actions. Because we review the administrative decision under the Kansas Judicial Review Act, K.S.A. 77-601, et seq., the district court’s ruling carries no *665 particular import at this stage. The district court developed no factual evidence supplementing the administrative record.

 The statute could be characterized as verbose. The complete language of that portion of K.S.A. 2014 Supp. 19-431(a) states:
“At the hearing the director of properly valuation shall make inquiry as to all facts connected with such suspension or termination, and if after such inquiry is made the director of property valuation shall determine that the appraiser suspended should be removed permanently and such appraiser’s office declared vacated or should be terminated, then the director of property valuation shall render an order removing such appraiser.”